**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard W. WIESNER,
Defendant-Appellant.**

**No. 85–1939.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1985.

Decided May 1, 1986.

---

Sarah Furey Crandall, Crandall Law Office, Madison, Wis., for defendant-appellant.

John W. Vaudreuil, Asst. Atty. Gen., Madison, Wis., for plaintiff-appellee.

Before CUDAHY and POSNER, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Defendant-appellant, Richard W. Wiesner, appeals his conviction, in a jury trial, on four counts of transporting stolen automobiles from Illinois to Wisconsin, in violation of 18 U.S.C. §§ 2 and 2312. The court imposed consecutive five-year sentences of incarceration and fines of $5,000 on Counts II and IV, and suspended sentencing on Counts I and III, placing Wiesner on five years' probation following his release from

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

prison. Wiesner filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the conviction.

### Facts

Between November 1982 and September 1984, Wiesner delivered four cars stolen from the Chicago area to Lee Buchholz, the owner of a car service repair shop in St. Germain, Wisconsin. In early November 1982, Buchholz contacted Dennis Tatro, the owner of a Wisconsin salvage yard, looking for a 1979 Cadillac. Tatro called Al Gschwin in Chicago, and a few days later Wiesner drove a 1979 Cadillac to Tatro's salvage yard. Tatro knew that the car was stolen. He, Wiesner, and Wiesner's companion, Anita Innes, then delivered the Cadillac to Buchholz. Buchholz received no title for the car, but paid Tatro, who in turn paid Wiesner from the cash he received. The Cadillac bore the serial number of a car reported stolen in Evanston, Illinois on November 5, 1982.

In the spring of 1983, Wiesner introduced himself to Buchholz as "Rich from Chicago," informing him that he was taking over for Tatro, and that he would deal directly with Buchholz in the future. After that, Wiesner periodically telephoned Buchholz to learn what types of vehicles he needed. Wiesner then delivered, or had someone deliver, whatever Buchholz requested. Such a transaction occurred on December 21, 1983, when Wiesner and Anita Innes delivered a 1983 Oldsmobile, the subject of Count III, to Buchholz. The FBI identified it by the packing slip found in the back seat which matched the vehicle identification number of a car reported stolen by a Chicago resident shortly before Christmas 1983.

On February 14, 1983, Wiesner and Innes delivered a 1981 Datsun 280ZX, the subject of Count IV, to Buchholz as he had requested. Buchholz agreed to mail a check for the payment of this car to Innes. She later received a check for a portion of the money Buchholz owed Wiesner.

Between April and August 1984, Wiesner telephoned Buchholz approximately forty times from Chicago, asking for money which Buchholz owed him, and discussing more cars, especially another Datsun 280ZX which Wiesner wanted Buchholz to take. Wiesner volunteered to sell one of Buchholz' cars to get the money Buchholz owed him. In late May or early June, in Milwaukee, Buchholz paid Wiesner approximately $1,000, gave him a car to sell, and asked him to deliver the Datsun they had been discussing since April.

On July 16, 1985, Buchholz consented to an FBI search of his premises, in which they found the Cadillac, the station wagon, and the Datsun, the subjects of Counts II, III and IV. In August 1984, Buchholz entered a plea agreement with the United States, promising to cooperate in the investigation of Wiesner. On August 26th, 27th and 30th, he tape-recorded telephone conversations with Wiesner about the delivery of the second Datsun. On August 31st, Wiesner delivered the car and received payment from Buchholz with money from the FBI. During a tape-recorded conversation which followed, Wiesner told Buchholz that he had had the Datsun so long that the battery had gone dead. The FBI took custody of the Datsun that same day. The owner had reported it stolen on April 2, 1984. This Datsun became the subject of Count I of the four-count indictment returned against Wiesner on December 19, 1984.

Wiesner raises three issues on appeal:

I. Whether sufficient evidence existed to convict him on Counts I and III;

II. Whether the district court properly instructed the jury on the inference of interstate transportation of a vehicle; and,

III. Whether the district court adequately admonished the jury to not discuss the case prior to deliberation.

### I. *Whether sufficient evidence existed to convict him on Counts I and III.*

Wiesner contends that the jury had insufficient evidence to conclude that either

the Datsun of Count I or the Oldsmobile of Count III were stolen, because the owners did not testify and because the cars were "give-ups," or cars taken with the owners' consent in an effort to defraud an insurance company. He further asserts that the jury had insufficient evidence to conclude that he transported the Datsun in interstate commerce, because five months elapsed between its disappearance in Illinois and delivery to Buchholz in Wisconsin.

"[W]e must review the entire record in the light most favorable to the government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to justify a finding of guilty beyond a reasonable doubt." *United States v. Bailey*, 763 F.2d 862, 863 (7th Cir.1985) (citations omitted). We may overturn a jury verdict only if "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Thomas*, 774 F.2d 807, 811 (7th Cir.1985) (citations omitted). In this case, the government had to prove, beyond a reasonable doubt, that the cars were stolen, that Wiesner knew that they were stolen, and that he transported them in interstate commerce. 18 U.S.C. § 2312.

■ We find Wiesner's arguments unpersuasive. First, the government presented ample evidence to establish the stolen nature of the cars. With respect to Count I, the government presented the wife of the owner of the Datsun, who testified about the theft of the car from her husband's office on April 2, 1984. Buchholz testified that in April 1984, Wiesner called him to say that he had another Datsun 280ZX for

him, and, that upon delivery in August, Wiesner told Buchholz that he had had it so long that the battery had gone dead. The government also introduced a photograph of the Datsun taken August 31st at Buchholz' shop, showing an ignition override device dangling from the steering column. With respect to Count III, the son of the owner of the Oldsmobile testified that he had seen his father in his car on approximately December 20, 1983, and that his father had reported it stolen just before Christmas 1983. Wiesner delivered that car to Buchholz in Wisconsin on December 21, 1983.

Second, Wiesner's theory of "give-ups" has no merit. He did not develop this theory either on direct or on cross-examination.

■ Finally, we cannot overturn the jury's verdict merely because five months elapsed between the disappearance of the Datsun in Illinois and its delivery in Wisconsin. Other evidence indicated Wiesner's possession of the Datsun from early April 1984 until he delivered it on August 31st, five months later. We believe that a rational trier of fact could have found beyond a reasonable doubt that Wiesner transported the stolen Datsun from Illinois to Wisconsin. *See Thomas*, 774 F.2d at 811.

II. *Whether the district court properly instructed the jury on the inference of interstate transportation of a vehicle.*

■ The district court gave an instruction modeled after this circuit's approved criminal jury instructions on inferences, adding a clause which Wiesner contests on appeal.[1] Wiesner contends that the added clause, *see* instruction, *supra*, note 1, could have mistakenly caused the jury to find the

---

1. The district court gave this instruction:

The term "recently" is a relative term, it has no fixed meaning. Whether property may be considered recently stolen depends on the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

If you find beyond a reasonable doubt from the evidence in the case that a motor vehicle described in the indictment was stolen in Illinois, and that while recently stolen the motor vehicle was in the possession of the defendant in Wisconsin, you may from those facts draw the inference that the motor vehicle was possessed by the defendant with knowledge that the motor vehicle was stolen *and infer transportation of that vehicle in interstate commerce* unless possession of the recently stolen

element of willful transportation of the cars in interstate commerce based only upon their presence first in Illinois and subsequently in Wisconsin.

"In examining the propriety of jury instructions, we view the instructions as a whole, and 'as long as they treat the issues fairly and accurately, they will not be interfered with on appeal.'" *United States v. Thibodeaux*, 758 F.2d 199, 202 (7th Cir. 1985) (citations omitted). A fair reading of the instruction in question allows the jury to draw two inferences, if they find beyond a reasonable doubt that the cars were stolen in Illinois, and a short time later were in the defendant's possession in Wisconsin: 1) that the defendant possessed the cars knowing that they were stolen, and 2) that the cars were transported in interstate commerce. It does not allow the jury to find the element of willful transportation by Wiesner, which previous instructions had already addressed. Transcript at I–B–66 to 68. This instruction also emphasizes the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence warrant such inferences beyond a reasonable doubt, and to find the defendant guilty only if they do. In viewing the instructions as a whole, we find that they treat the issues fairly and accurately, including the instruction on inferences.

III. *Whether the district court adequately admonished the jury to not discuss the case prior to deliberation.*

The district court admonished the jury only once not to discuss the case prior to

property by the defendant is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.

\* \* \* \* \* \*

It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence, or if you entertain reasonable doubt of guilt, you must acquit the accused. Transcript at II–B–69 (emphasis added to show which clause the court inserted). *Compare* II

deliberations. While the jury was deliberating, the alternate juror made a comment to one of Wiesner's attorneys about "being confused." After the trial, Wiesner made a motion for a new trial, alleging that premature discussions had prejudiced the jury, violating his Sixth Amendment right to an impartial jury. The affidavit of a private investigator confirmed that some of the jurors, prior to deliberations, had discussed the meaning of "give-up," "clip," "ride," "title," and "tag." Other jurors had no recollection of any such discussion.

 The management of juries traditionally lies within the sound discretion of the trial judge. *United States v. Arciniega*, 574 F.2d 931, 933 (7th Cir.), *cert. denied*, 437 U.S. 908, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978). Failure to admonish the jury, absent some showing of prejudice, does not warrant reversal. *Id.* at 933 n.4. In Wiesner's trial, the district court gave the jury the following preliminary instruction after their selection and swearing in:

Now a few words about your conduct as jurors. First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you until you retire to the jury room at the end of the case to deliberate on your verdict. You simply are not to talk about this case.

Transcript of sentencing hearing at 31.[2] The court did not repeat this admonition during the one and a half day trial.

It is a fundamental principle of our jurisprudence that "the jury's verdict

Committee on Federal Criminal Jury Instructions of the Seventh Circuit, *Federal Criminal Jury Instructions of the Seventh Circuit* 2 (1984).

**2.** In the transcript of the sentencing hearing, the court acknowledges a gap in the transcript of the trial from 9:15 until 11:46 a.m. on March 18, 1985. During that time, the court gave the jury preliminary instructions, one of which is quoted above, as taken from the court's notes. Transcript of sentencing hearing at 30–31. Neither the government nor Wiesner dispute the content of the instruction, nor the fact that the court read it then, and only then.

must be based on evidence received in open court, and not from outside sources." *Sheppard v. Maxwell,* 384 U.S. 333, 351, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966). Nevertheless, a new trial is not required automatically whenever a jury is exposed to material not properly in evidence. Rather, a new trial is required only when there is a "reasonable possibility" that the material affected the jury verdict. *United States v. Bruscino,* 687 F.2d 938, 940 (7th Cir. 1982) (en banc). Each case "must turn on its special facts," *Marshall v. United States,* 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250 (1959), and in each case the crucial factor is "the degree and pervasiveness of the prejudicial influence possibly resulting" from the jury's exposure to the extraneous material. *United States v. Solomon,* 422 F.2d 1110, 1118 (7th Cir.1970). The trial court has the primary responsibility for making this determination of prejudice, and an appellate court must review the trial court's determination under an "abuse of discretion" standard. *United States v. Bruscino,* 687 F.2d at 940.

*United States v. Weisman,* 736 F.2d 421, 424 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984).

In the instant case, the district court found that a new trial was not warranted because the discussions did not relate to the merits of the case, nor affect the impartiality of the jurors. We do not think that the district court abused its discretion in denying Wiesner's motion for a new trial. Those terms were the substantial equivalent of matters already introduced into evidence and may, therefore, be held harmless. *See Weisman,* 736 F.2d at 425. We cannot imagine any prejudice resulting from the alternate juror's definition of these words. Understanding those terms in no way jeopardized Wiesner's theory of defense. Consequently, the court's sole admonishment does not warrant reversal of this day and a half trial.[3]

## CONCLUSION

We AFFIRM the decision of the district court.

---

3. Admonishing the jury is a critical and important duty and cannot be over-emphasized. A district judge must exercise his discretion to determine when and how frequently to admonish the jury, according to the circumstances of each case, and in the absence of an abuse of discretion by the trial judge in assessing the "reasonable possibility" that the challenged material affected the jury verdict, we will not reverse. *United States v. Bruscino,* 687 F.2d 938 (7th Cir.1982) (en banc).