UNITED STATES of America,
Plaintiff-Appellee,

v.

Peter J. KAUFMANN, Jan E. Ostermeier
and William C. Cummings,
Defendants-Appellants.

Nos. 85–1692, 85–1693 and 85–1695.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1986.

Decided Oct. 3, 1986.

Ralph A. Kalal, Kalal & Habermehl, Madison, Wis., Leonard G. Leverson, Milwaukee, Wis., for defendants-appellants.

Grant C. Johnson, U.S. Atty.'s Office, Madison, Wis., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

The defendants were convicted of conspiracy to purchase marijuana with intent to distribute. They requested a new trial because one of the witnesses at trial, a government agent, had testified falsely about the number of telephone conversations he had had with one of the defendants the morning of the sting operation. The district court denied the motion for a new trial. We affirm.

I

The four co-defendants in this case, Peter J. Kaufmann, Jan E. Ostermeier, William C. Cummings and Terrell D. Brown,[1] were convicted by a jury of conspiracy to purchase marijuana with intent to distribute. Kaufmann was also convicted of using a communications facility in furtherance of the conspiracy. The government agents involved in this case had carried out a "reverse sting" operation in which the agents assumed the role of marijuana suppliers and sought to sell marijuana to the defendants.

At trial the government's principal witness, Agent John Holm of the Division of Criminal Investigation of the Wisconsin Department of Justice, testified that on June 15, 1984, the date of the sting operation, he had not spoken to Kaufmann before eleven that morning. After trial the defendants moved to vacate their convictions, or in the alternative for a new trial, because Holm had testified falsely at trial. After a hearing the district court found that Holm's testimony was false. Holm had in fact called Kaufmann three times before 11 a.m. on June 15. The district court, however, explicitly declined to find whether Holm had perjured himself. Presumably it was only considering whether the defend-

---

1. Defendant Terrell Brown does not appeal.

ants were entitled to a new trial under *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928), which does not require that the false testimony be perjured. The district court found that the defendants had failed to meet the other requirements of *Larrison, see infra* at 292–293, and thus denied the motion for a new trial.

On appeal we remanded to the district court to determine whether the prosecution's case included perjured testimony and whether the prosecution knew, or should have known, of the perjury under the standard articulated in *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). *See United States v. Kaufmann*, 783 F.2d 708 (7th Cir.1986). On remand the district court found that Holm did not know that he was testifying falsely about the telephone calls. The district court further found that the prosecution did not know that the testimony was false and that the circumstances were not such that the prosecutor should have known of its falsity. The district court thus reinstated its denial of the motion for a new trial. Now that the appropriate findings are before us, we will address the merits of the defendants' appeal of their convictions.

The defendants each make different arguments. Kaufmann argues that the record does not support the district court's conclusion that the prosecutor did not know that Holm's testimony was false. He also argues that the district court's theory of Holm's credibility is flawed. Ostermeier argues that he is entitled to a new trial under *Larrison* and also because of the government's misconduct. Further, he argues that there was insufficient evidence to convict him. Cummings argues that he is entitled to a new trial under *Larrison*. All of the defendants contend that the district court should have held an evidentiary hearing on remand.

## II

■ It is within the sound discretion of the district court to decide whether a new trial should be granted on the basis of newly discovered evidence. *See United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir.1984). On appeal we only review the district court's decision for an abuse of discretion. *Id.* The heavy burden placed upon the appellant in this situation has repeatedly been noted by this court:

> The party who claims that the trial court erred in denying his motion for a new trial is not likely to be successful. The appellate court properly defers to the view of the trial court, and will affirm unless there has been an error as a matter of law or a clear and manifest abuse of judicial discretion.

*Id.* (quoting *United States v. Davis*, 604 F.2d 474, 484 (7th Cir.1979)).

■ In his initial brief to this court, Kaufmann argued that he was entitled to a new trial under the standard articulated in *Napue*. Under that standard a conviction must be set aside if the prosecution's case includes perjured testimony, the prosecution knew, or should have known, of the perjury, and there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *See United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 3382 & n. 8, 87 L.Ed.2d 481 (1985); *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269–71, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959); *United States v. Jackson*, 780 F.2d 1305, 1309 (7th Cir.1986); *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 392 (7th Cir.1985).

■ In light of the district court's findings on remand, Kaufmann argues that a prosecutor cannot obtain a conviction through the knowing use of false evidence, even if the testimony is only mistaken rather than perjured, and that the record does not support the district court's finding that the prosecutor did not know that the testimony was false. Kaufmann argues that the record contains no evidence as to the state of the prosecutor's knowledge of the falsity of Holm's testimony. In the case before us, however, it is reasonable to infer

that if Holm did not know of the falsity of his testimony, the prosecutor also did not. Holm's testimony at trial about the phone calls was consistent with his earlier testimony before the grand jury and with his deposition testimony. Kaufmann argues that certain inconsistencies in Holm's testimony should have put the government on notice of the falsity of his testimony.[2] The district court, however, concluded that the inconsistencies in Holm's testimony did not put either Holm or the prosecutor on notice.

It could be argued that Holm should have checked the office telephone records once he noticed the references in the 11:00 a.m. call to the accident and the splitting of the sale. Although that would have been a wise step, his failure to take it does not render his testimony perjured, or the government's use of it knowing, even attributing Holm's knowledge to the federal prosecutor. I suspect that Holm had convinced himself that he did learn about the accident during his midnight meeting with Kaufmann and thus saw no discrepancy in the phone conversation that would have prompted him to check the telephone records. Since he had more incentive to check and ensure the completeness and accuracy of his testimony, I find it improbable that he chose intentionally not to check or

that he checked and concealed the results of his check.

District Court Order (March 19, 1986) at 10. The district court did not abuse its discretion in finding that Holm did not commit perjury and that the prosecutor did not know of the falsity of Holm's testimony.

Kaufmann also argues that the district court's theory of Holm's credibility was faulty. He argues that the district court erred because it predicated its theory of credibility in part on Kaufmann's failure to raise an entrapment defense. Kaufmann argues that he did in fact raise an entrapment defense. He cites to portions of his opening argument at trial, which do contain contentions that he was entrapped. However, Kaufmann apparently did not pursue the entrapment defense beyond his opening argument. The jury instructions submitted by Kaufmann did not contain an entrapment instruction, and he did not request such an instruction during the jury instruction conference. Further, the fact that Kaufmann did not raise an entrapment defense was only one of several reasons from which the district court concluded that Holm did not perjure himself.[3]

### III

Ostermeier's original appellate brief does not rely on *Napue* in arguing for a new

2. There is some mention of an automobile accident in the transcript of the 11 a.m. phone conversation. Holm testified before the grand jury that he had learned of the accident during the 11 a.m. conversation. The transcript of the conversation, however, shows that Holm (not Kaufmann) was the first to mention the accident. At trial Holm testified that he learned of the accident the night before when he met with Kaufmann at Hare's Towne Bowl. However, his police report of his meeting at Hare's Towne Bowl does not mention any conversation about an accident.

3. The district court stated:
My present finding that Holm's testimony was not perjured derives from several sources. First, I had the opportunity to observe Agent Holm on the witness stand over an extended period of time. He appeared forthright and cooperative. He did not attempt to avoid answering questions or provide dubious explanations for the inconsistencies in his testimony and

his reports. Second, the information he is alleged to have withheld was information known to defendant Kaufmann. Also, it was information that could be checked by reference to reliable, third-party sources, specifically, the telephone company or state administrative records....
Third, I can think of no convincing reason for Holm to want to lie about the number or the timing of his telephone calls to Kaufmann....
If Kaufmann really believed Holm's earlier calls to be so threatening as to overbear his will, he would have raised an entrapment defense.... Moreover, testifying to making seven calls rather than four would not have hurt Holm's credibility; it would have enhanced it....
Finally, it is understandable why Holm would have forgotten about the three unrecorded calls.
District Court Order (March 19, 1986) at 7–9.

trial, but rather relies on *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928). The *Larrison* requirements for a new trial were recently set forth in *United States v. Nero,* 733 F.2d 1197 (7th Cir.1984):

(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) That the jury *might* have reached a different conclusion.

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

733 F.2d at 1202 (quoting *Larrison,* 24 F.2d at 87–88) (emphasis in original).

■ The district court found that the jury would not have reached a different conclusion had the false testimony not been given. Ostermeier argues that the jury might have reached a different conclusion because if Holm had been exposed before the jury as having deliberately told falsehoods his credibility would have been seriously undermined. However, the district court found that Holm did not know that he was testifying falsely. Thus it is unlikely that exposure of the falsehood would have had such a significant effect on his credibility. Further, the district court found that the evidence of the additional calls would not affect the outcome of the trial because, although it might have allowed for further impeachment of Holm, Ostermeier's attorney had already done a good job of impeaching him. Transcript of Motion Hearing (April 11, 1985) at 87. We cannot say that the district court abused its discretion in finding that the second prong of the *Larrison* test was not met.

Ostermeier also argues that he should be granted a new trial because of the government's misconduct. He identifies three instances of alleged misconduct: 1) the false-

hoods told by Holm at trial; 2) the failure of the government to disclose the three phone calls made by Holm before 11 a.m. on June 15, 1984; 3) the failure of the government to disclose the whereabouts of a witness, Earl Clark Brown, until such time as a proper investigation by defense counsel was impossible. The first two instances of alleged misconduct are disposed of by the district court's sustainable findings that Holm did not know that he was testifying falsely and that the prosecutor did not know of the falsity of the testimony.

■ As to the third ground, the failure of the government to reveal the whereabouts of Brown, the government argues that this issue was not presented to the district court in the motion for a new trial and thus cannot be presented on appeal. Ostermeier argues that the issue was presented to the district court because the court had before it a motion to require production of the witness.[4] We agree with the government that the issue of governmental misconduct was not before the district court. A motion to require production of a witness does not place before the district court the issue whether a new trial should be granted because of governmental misconduct. Further, Ostermeier's motion does not even mention governmental misconduct. In any case, if Ostermeier thought that there was governmental misconduct justifying a new trial, he should have raised that issue in his motion for a new trial. His failure to do so is a waiver of that issue.

Ostermeier's final argument is that there was insufficient evidence for the jury to convict him. "We may overturn a jury verdict only if 'the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond

---

4. Ostermeier's motion is dated January 17, 1985. The trial began on January 28. The motion was denied by the district court on January 24, 1985, because:

Defendants have known about Mr. Brown for a considerable period of time. They give no satisfactory explana-

tion for having waited until the eve of trial to demand exculpatory evidence regarding him. Nor do they explain why the materials sought would be exculpatory.
*United States v. Kaufmann,* Order 84–CR–39–C (N.D.Ill. January 24, 1985).

a reasonable doubt.'" *United States v. Wiesner,* 789 F.2d 1264, 1267 (7th Cir.1986) (quoting *United States v. Thomas,* 774 F.2d 807, 811 (7th Cir.1985)). We must review the record in the light most favorable to the government to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, justifies a verdict of guilty beyond a reasonable doubt. *See United States v. Wiesner,* 789 F.2d 1264, 1267 (7th Cir.1986); *United States v. Bailey,* 763 F.2d 862, 863 (7th Cir.1985). The appellant bears a heavy burden to show that the record contains no such evidence. *See United States v. Silva,* 781 F.2d 106, 108 (7th Cir.1986).

■ Ostermeier was present at the site of the reverse sting at the time of the arrest. The jury was instructed (and Ostermeier does not challenge this instruction) that, although mere presence at the scene of a crime or mere association with the conspirators will not by themselves support a conspiracy conviction, presence or a single act is sufficient if the circumstances permit the inference that the presence or the act was intended to advance the ends of the conspiracy. Ostermeier arrived at the scene in a vehicle with Kaufmann and Brown, two of the other three defendants. Tr. Vol. II at 42–44. He conversed with Holm about the transaction. Holm testified at trial that "Jan Ostermeier said that money was no problem as long as the marijuana was of relatively good quality," and that "Jan Ostermeier stated that the marijuana that Jan Ostermeier, Terrell Brown and Peter Kaufmann were going to be purchasing in fact was already sold to prospective buyers." Tr. Vol. II at 46–47. On cross-examination Holm admitted that he had testified before the grand jury that Ostermeier had said that "money is not a problem to these people." Tr. Vol. II at 76–77. Holm also admitted that he had testified: "It's just a matter of them obtaining the marijuana first. For example, the marijuana that they were going to obtain today, meaning the 200 pounds, was already sold." Tr. Vol. II at 77. We agree with the district court that although the

evidence against Ostermeier is weak, it is sufficient to support the jury verdict.

In his supplemental brief, Ostermeier argues that the district court abused its discretion in finding that Holm and the prosecutor did not know that Holm's testimony was false. We have already addressed this issue in considering Kaufmann's claims. Ostermeier, however has raised an additional point that merits brief attention. He argues that to accept the district court's March 19, 1986 opinion, one must accept Holm's selective memory. Ostermeier claims that it is implausible that Holm remembered some phone calls but forgot others. We believe, however, that the district court did not abuse its discretion. The district court devoted considerable attention to the issue whether Holm could have forgotten certain calls but not others:

> Finally, it is understandable why Holm would have forgotten about the three unrecorded calls.... For outsiders, it is all too easy to view the activities of undercover agents as so exotic and unusual as to be unforgettable. The fact is, these activities are routine to the agents and readily blur in their memories with other phone calls and other investigations.

> The atmosphere in Holm's office on June 15 was hurried and tense. Holm was under pressure to get the deal underway before the marijuana had to be delivered elsewhere; he was acting a role in his contacts with Kaufmann; he had had less than five hours sleep the night before; and he was working in someone else's office. He was trying to keep bulky files up-to-date and complete.

> Under those circumstances, it is more understandable why he would have failed to write reports of all the calls to Kaufmann and why he would have remembered only the four recorded calls rather than the six or seven he actually made. Indeed, the very number of the Kaufmann calls makes it less likely he would remember each one, whereas it is more likely he would have remembered the one call to defendant Cummings, which was

made for a specific purpose. Once he failed to make reports on the calls, he lost his means of remembering them later.

District Court Order (March 19, 1986) at 9–10. Hence, we must reject Ostermeier's arguments.

## IV

◾ Cummings argues that the failure to disclose the telephone conversations undermined two prongs of his defense: 1) that he participated only in preliminary negotiations [5] and 2) that he was an agent of the seller, not of the buyers.[6] Cummings also argues that Holm's credibility would be harmed by the fact that false testimony was presented and that Holm did not remember the content of the morning telephone calls. The district court found that the accurate testimony about the calls would have made no difference in the jury's evaluation of Cummings' guilt, given the nature of his defense. We cannot say

that the district court abused its discretion in denying Cummings' motion for a new trial.

## V

Both Ostermeier and Cummings argue that the district court should have held a further evidentiary hearing on remand because a sufficient factual record was not previously developed on the issue of whether the prosecution knew of the false testimony. They argue that a sufficient factual record was not developed because the hearing on the motions for a new trial dealt only with the *Larrison* issue. We do not believe that the district court erred by not conducting an additional hearing. First, we have already concluded that the district court did not abuse its discretion by finding, on the basis of the record before it, that the prosecutor did not know of the falsity of Holm's testimony. Second, the defendants do not argue that they request-

---

5. Cummings argues:

> By omitting the three June 15th morning calls to Peter Kaufmann, the Holiday Inn deal consumated on the 15th is portrayed as merely another location for the previously arranged deal, rather than a deal arranged from scratch on the 15th between the principals following the breakdown of earlier negotiations. Agent Holm's June 15th telephone conversations, according to his false trial testimony, began with discussing details of a transaction. This clearly implies that an agreement had already been reached between Holm and Kaufmann. As the false testimony disclosed no opportunity for this agreement to have been reached at any other time, it forces—from the fact the transaction did occur—the conclusion that the agreement was reached *before* June 15th, at a time when Olsen and defendant Cummings were still involved.

Supplemental Brief of Defendant Cummings at 6 (emphasis in original).

6. As to the second prong of his defense, Cummings argues:

> In the telephone conversations with Peter Kaufmann which Agent Holm recorded, *Holm* mentioned Cummings [sic] name.... At the Holiday Inn on the afternoon of June 15th, Holm stated, in effect, that it was not his responsibility to bring Cummings....: Both of these state-

ments were self-serving—that is, they served to explain Cummings [sic] absence from the scene of the transaction in a way which identified Cummings as part of the buyer group where otherwise the impression would have been that Cummings was absent, like Jon Olson, because his services as seller's agent were no longer required. The credibility of this view of defendant Cummings [sic] role was enhanced by omission of the morning June 15th conversations between Holm and Kaufmann, because it made Holm's June 15th statements about Cummings appear part of an understanding of roles by himself and Kaufmann achieved *before* June 15th. It left the jury with no other viable time for that understanding to have been achieved, because the jury knew of no other time when it could have been achieved. Had the jury known of the omitted telephone conversations, Kaufmann's statement to Holm at the Holiday Inn, that he was under the impression that defendant Cummings would be there to drive the van away and Holm's response that providing a driver was not his responsibility ... would have been related back to those conversations and clearly imply that Holm had agreed to bring Cummings to the Holiday Inn as someone acting at Agent Holm's direction, i.e. Holm's agent.

Supplemental Brief of Defendant Cummings at 7–8 (emphasis in original).

**296**

ed the district court to hold an evidentiary hearing on remand, nor do we find any indication in the record of such a motion. Thus the defendants' request apparently comes too late in this case.

The district court did not abuse its discretion in denying the defendants' motions for new trial. The false testimony in this case does not require that the convictions be vacated. The district court's judgment is affirmed.