**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jonathan VERSER,**
**Defendant–Appellant.**

**No. 90–1420.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1990.

Decided Oct. 30, 1990.

R. Jeffrey Wagner, Asst. U.S. Atty., Rodney Cubbie, Office of U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Jonathan R. Verser, Chicago, Ill., pro se.

Linda A. Leaf, Milwaukee, Wis., for defendant-appellant.

Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Jonathan Verser was convicted of one count of conspiracy to distribute cocaine and two counts of possession with intent to distribute cocaine. He challenges his convictions on three grounds: first, that the prosecution suborned perjury by a government witness; second, that the prosecution misled the defense concerning the content of certain taped telephone conversations; and third, that the trial judge improperly coached a prosecution witness. We affirm the convictions.

I.

On November 14, 1988, Kenneth Huff met Kenneth Durrah on the porch of a residential building in Milwaukee, Wisconsin. As Huff and Durrah had previously arranged, Huff handed Durrah approximately two ounces of cocaine. Durrah handed Huff $1,700. Accompanying Huff to his meeting with Durrah was defendant

Jonathan Verser. Shortly after the transaction with Durrah, Huff handed Verser the money he had received.

Unknown to both Huff and Verser, Durrah was a confidential informant acting on behalf of the Drug Enforcement Agency ("DEA") and working with DEA agent Ray Melick. Later that day, Durrah, using a telephone at DEA's Milwaukee offices, telephoned Huff and arranged a second deal. Durrah also tried to persuade Huff to meet directly with Melick, whom he described as an interested buyer. Huff refused. Durrah also tried to reach Jonathan Verser, calling the number assigned to Verser's beeper. Verser, however, was unavailable, and Durrah left a message with his beeper service.

The second meeting took place on November 16 in a Milwaukee shopping mall. Melick and Durrah drove up in one car, Verser and Huff in another. Durrah and Huff entered the mall and met in a restroom. Again Durrah attempted to persuade Huff to meet with Melick directly. Again Huff refused. Durrah left the mall to confer with Melick before returning to the mall restroom. Waiting in the restroom this time was Verser, who provided Durrah with approximately four ounces of cocaine. Durrah left the mall and gave the cocaine to Melick. Melick provided Durrah with $3,200 in buy money, which Durrah, after reentering the mall, provided to Huff.

Later that afternoon, Verser received the message Durrah had left with Verser's beeper service and returned Durrah's call. As he had with Huff, Durrah tried to persuade Verser to meet with Melick. Verser refused, but in the course of the conversation made a series of statements implicating himself as a drug dealer. This conversation was tape recorded by DEA.

Shortly thereafter, Huff and Verser were arrested. A grand jury indicted Huff and Verser of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2. In addition, the Grand Jury indicted Huff and Verser of two counts of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The first possession count related to the two-ounce sale on November 14th, the second to the four-ounce sale on November 16th.

Before trial began, Huff pled guilty to the conspiracy count. Verser also pleaded guilty, but later withdrew his guilty plea with the district court's permission. The case was then reassigned to another district judge and proceeded to trial. Following a three-day trial, the jury convicted Verser on all counts.

## II.

■ Verser's first prosecutorial misconduct claim arises out of the government's use of allegedly perjured testimony provided by Verser's co-conspirator Kenneth Huff. At his plea hearing, Huff indicated that he and Verser had obtained the cocaine they sold from Verser's brother James. At trial, Huff was cross-examined by defense counsel, who asked him where he and Jonathan Verser had obtained the cocaine he sold on November 14th. Huff replied that they had obtained it from a former schoolmate of his who was now operating a drug house in Milwaukee. As to the cocaine distributed on November 16th, Huff testified at trial that the cocaine he and Jonathan Verser had supplied to Durrah had come from someone named Reid.

On appeal, Verser contends that either Huff was lying about where he and Verser had obtained the cocaine when he testified at his plea hearing or he lied on the stand.[1]

---

1. Verser also notes that he was prevented from fully exploring the inconsistency in Huff's testimony by the trial judge's ruling that Fed.R. Crim.Pro. 11(e)(6) prevented Huff from testifying as to what he had said at his plea hearing.

Fed.R.Crim.Pro. 11(e)(6) prevents the introduction of statements made at a plea hearing by any defendant who later withdraws her plea. We do not understand the rule to prevent a coconspirator who sticks by her guilty plea from answering questions about testimony she gave at *her* plea hearing so long as she does not reveal that her co-conspirator once pled guilty on the charges for which he now is standing trial or otherwise prejudice her co-conspirator. *Cf. United States v. Serna,* 799 F.2d 842, 849 (2d Cir.1986) (Rule 11(e)(6) bars introduction of statement of co-conspirators made in the course

He asks us to find that the prosecution solicited false testimony from Huff in violation of Verser's constitutional rights. Verser claims that he was deprived of a fair trial because of prosecution use of Huff's inconsistent testimony. We disagree.

"Under [*Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)] a conviction must be set aside if the prosecution's case includes perjured testimony, the prosecution knew or should have known of the perjury, and there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Kaufmann*, 803 F.2d 289, 291 (7th Cir.1986); *see also United States v. Douglas*, 874 F.2d 1145, 1159 (7th Cir.1989). However, not every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation. "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir.1987); *see also Anderson v. United States*, 403 F.2d 451, 454 (7th Cir.1968). Here Huff was a young witness subjected to extensive cross-examination spanning two days of trial. The inconsistent statements related to events that occurred more than a year before his trial testimony and nine months before his testimony at the plea hearing. It is not at all clear that his inconsistent testimony amounted to perjury, "the willful assertion under oath of a false, material fact." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir.1984); *see also* 18 U.S.C. § 1621; *United States v. Serola*, 767 F.2d 364, 373 (7th Cir.1985). Furthermore, Verser has not sustained his burden of showing "that the government deliberately used false evidence to obtain his conviction." *United States v. Santiago*, 798 F.2d 246, 247 (7th Cir.1986).

Nor is it clear that Verser suffered prejudice because of Huff's inconsistent statements. Verser was on trial for possessing and distributing cocaine and conspiring to do so. The question of where he obtained the cocaine he later sold to Durrah is not probative of his ultimate guilt or innocence. Even were we to assume that Huff did perjure himself with the prosecution's knowledge, it is not clear that Huff's statements created a "reasonable likelihood" that the jury's judgment as to Verser's culpability was affected. *Kaufmann*, 803 F.2d at 289.

### III.

▮ Verser's second claim of prosecutorial misconduct also relates to his plea hearing. At the hearing, the government described its proof to the district judge. One component of the government's proof was the taped phone conversation between Jonathan Verser and confidential informant Durrah in which Jonathan Verser parried Durrah's attempt to set up a meeting between Verser and DEA Agent Melick. During this conversation, Jonathan Verser stated that if Melick was satisfied with "the packages" there was no need for Melick to meet Verser and the relationship would continue as it had before, through the use of an intermediary, Durrah.

Defense counsel objected, contending that the voice on the tape was not Jonathan Verser's but rather that of his brother James. The Assistant United States Attorney responded that "[i]t would have been the government's contention at trial that the voice on the phone ... was that of Jonathan Verser; but I concede that it is possible that it could have been James Verser." Plea Transcript at 36. The prosecution had previously provided the defense with a copy of the tape.

At trial, the government sought to introduce the tape, which it now contended con-

of plea negotiations where statement would have "devastating impact" on co-conspirator).

Here, Huff and Verser entered guilty pleas at the same hearing, but it would not have violated the rule for defense counsel to ask *Huff* about prior inconsistent statements he made at the time he entered his guilty plea. *See* Fed.R.Evid.

801(d)(1). Verser has not raised this ground on appeal, and we do not pursue it further. Furthermore, the prosecution contends that it withdrew its objection to defense exploration of the inconsistency in Huff's testimony through the use of Huff's testimony at the plea hearing. Government's Brief at 11.

tained the voice of Jonathan Verser, not his brother James. Defense counsel moved to exclude the tapes on the ground of unfair surprise. Though conceding that the prosecution had not withheld the tapes from the defense, defense counsel asserted that she had relied on the government's concession at the plea hearing that the voice on the tape was James's, not Jonathan's. The government responded that the earlier statement was made when it appeared that Jonathan Verser was about to plead guilty and at that time the government "didn't really care whether it was his voice or not." Transcript at 232. The trial judge ruled in favor of the prosecution on the ground that the defense was provided with the tapes and had an opportunity to review them.

On appeal, Verser contends that the prosecution's concession at the plea hearing and subsequent use of the taped conversations amounts to suppression of evidence. We reject this argument. In providing defense counsel with the tapes of the conversations between Jonathan Verser and confidential informant Durrah, the prosecution went beyond its obligations under the Federal Rules of Criminal Procedure, see *United States v. McClure*, 734 F.2d 484, 493 (10th Cir.1984) (since defendants did not know at the time they made statements that persons they spoke to were government agents, the statements were not discoverable under Fed.R.Crim.Pro. 16(a)(1)(A)), and the Constitution, see *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 42 (1977) ("There is no general constitutional right to discovery in a criminal case...."). This is not a case where the government stipulated with the defense that certain evidence not be admitted and later went back on its word. See *United States v. Shapiro*, 868 F.2d 1125, 1127 (9th Cir.1989). It is true that the government may not renege on promises made to criminal defendants, *id.*, but here there was no promise. All that

the prosecutor conceded was the possibility that the voice on the tape was defendant's brother's. Indeed, the Assistant United States Attorney explicitly observed that had the case gone to trial, the government would have contended that the voice on the tape was Jonathan's. When Verser persuaded the district court to allow him to withdraw his plea, defense counsel had ample reason to anticipate that the government might seek to use the tapes at trial.[2]

## IV.

■ Verser's final ground on appeal relates to certain comments made by the trial judge during the cross-examination of DEA Agent Melick. Defense counsel sought to explore a perceived inconsistency between Melick's statement to the grand jury that he identified Verser at the two sales and internal reports Melick prepared shortly after each sale in which he identified Verser as John Doe No. 1. During this line of questioning, the district court asked Agent Melick if "the word 'identify' necessarily mean[t] eyeball identification." Transcript at 357. A few moments later, in sustaining a prosecution objection, the district court commented that "[t]o me, the word 'identify' does not necessarily mean eyeball observation." Transcript at 358. The defendant alleges that these two comments were unfairly prejudicial because they helped bolster the credibility of the DEA Agent.

"[A] federal district judge has wide discretion in determining the role he will play during the course of trial." *United States v. Cortwright*, 528 F.2d 168, 175 (7th Cir. 1975). "The examination of a witness requires judicial supervision." *United States v. Kwiat*, 817 F.2d 440, 447 (7th Cir.1987). A trial judge "has an active responsibility to insure that issues are clearly presented to the jury." *United States v. Pisani*, 773 F.2d 397, 403 (2d Cir.1985). "Fundamental to the right to a fair trial, however, is that the court's responsibility to assist the jury

---

2. We do not suggest that the government can never be bound by statements it makes at plea hearings after the defendant withdraws her plea. Rather, the fact that the statement is made at a plea hearing, at a time when both prosecution and defense share the assumption

that the case will not go to trial, may well be relevant in assessing the reasonableness of the defense's continued reliance on statements made by the government should the defendant subsequently seek to withdraw his plea.

in understanding the evidence should not be so zealously pursued as to give the impression to the jury that the judge believes one version of the evidence and disbelieves or doubts another." *United States v. Mazzilli,* 848 F.2d 384, 388 (2d Cir.1988).

The district court's comments must be evaluated in the context of the course of the trial. *Cf. Kwiat,* 817 F.2d at 447 (refusing to find judicial misconduct where judge "showed asperity in front of the jury no more than five times during an extended trial"). Here the district judge's two comments were isolated, and occurred in a trial marked by fairness in deciding objections. Furthermore, at no point during the trial did the district court actively cross-examine witnesses in a way that "conveyed to the jury any impression of the judge's belief in the defendant's probable guilt." *Pisani,* 773 F.2d at 403; *see also United States v. Crouch,* 528 F.2d 625, 633 (7th Cir.1976) ("Nor are we convinced that said comments gave the jury the impression that the court was playing the role of an advocate for the prosecution."). *Compare Mazzilli,* 848 F.2d 384, 388–89 (2d Cir.1988) (reversing conviction where district court extensively cross-examined defendant in manner strongly suggestive of belief in defendant's guilt).

The statements here may well have conveyed to the jury the judge's view that it was not inconsistent for Agent Melick to say to the grand jury that he was able to identify defendant through sources other than first-hand knowledge—such as information concerning physical appearance provided from state motor vehicle authorities—or to identify him after Melick observed the sales but before his grand jury testimony. That the content of these statements might be seen as favoring the prosecution does not make them so prejudicial that a reversal is warranted, especially as they related to the credibility of one of several witnesses linking Verser to the transactions that formed the basis of the charges. Furthermore, the second statement came in the context of a decision on a prosecution objection as to the basis of defense counsel's use of the grand jury

testimony. The trial judge stated his basis for sustaining an objection, a desirable practice, but one that jurors may perceive as favoring one or the other party. *See Kwiat,* 817 F.2d at 447 ("Yet a judge also must regulate the conduct of a trial, and this will require taking sides in skirmishes...."). Defendant has not shown that the two short statements at issue here created the degree of potential prejudice necessary to constitute judicial misconduct by the district court in this case.

## V.

For the foregoing reasons, the conviction of defendant on all counts is

AFFIRMED.