**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald G. ADCOX, Defendant–Appellant.**

**No. 93–1109.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1993.

Decided Jan. 11, 1994.

Opinion Amended March 18, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied April 26, 1994.

---

Timothy M. Morrison (argued), James M. Warden, Asst. U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

John A. Kesler, II (argued), Kesler & Kesler, Terre Haute, IN, for defendant-appellant.

Before COFFEY and EASTERBROOK, Circuit Judges, and FOREMAN, District Judge.*

COFFEY, Circuit Judge.

The defendant, Ronald G. Adcox, was indicted by a grand jury and charged with murder and conspiracy to commit murder in violation of 18 U.S.C. §§ 1111, 1112 and 1117.

---

* The Honorable James L. Foreman U.S. District Judge of the Southern District of Illinois, sitting by designation.

Adcox's first trial ended in a hung jury and thereafter the judge declared a mistrial. On December 10, 1992, a second jury found Adcox guilty of both charges. After denying post-trial motions, the district court sentenced the defendant to two concurrent life terms of imprisonment. The defendant appeals his conviction. We affirm.

## I. *FACTS*

On July 16, 1991, Luis Moreno was found murdered in his cell in the federal penitentiary in Terre Haute, Indiana. The FBI and prison officials conducted an investigation that resulted in a grand jury rendering an indictment against Adcox and Alejo Hernandez. Hernandez pled guilty to the indictment.

The district judge declared a mistrial in Adcox's first trial after the jury was unable to reach a verdict. In the second trial, the government presented the testimony of numerous inmates who stated that they saw Adcox and Hernandez enter Moreno's cell and leave it approximately five minutes later. The government also offered the testimony of eye-witness Jack Lopes, another inmate, who stood outside Moreno's cell and observed Adcox strangle the victim with a cord while Hernandez held Moreno's legs down. Lopes further testified that when the defendant and Hernandez exited Moreno's cell Hernandez asked Lopes for a razor blade. Lopes stated that he did not have one and Hernandez then obtained a razor blade from Adcox. He re-entered Moreno's cell and stated upon exiting the cell, "I got him." Approximately one hour later, Eccehomo Velgar–Vivero, Moreno's cousin and cellmate returned to the cell to discover Moreno lying on his bed with a pillow over his face and his right wrist slashed. Attempts to revive Moreno failed. An autopsy revealed that the cause of death was asphyxiation by strangulation.

Prior to his second trial, Adcox, who represented himself, made a motion *in limine* seeking to exclude the testimony of Jack Lopes because he believed Lopes committed perjury in the first trial and because of an alleged statement made by the Assistant United States Attorney ("AUSA") at the first trial calling Lopes' veracity into question. The trial court denied his motion *in limine* because (1) the defendant failed to offer any evidence that Lopes perjured himself in the first trial and, (2) Adcox would have ample opportunity to cross-examine Lopes during the second trial.

A significant aspect of the defense in the second trial was the testimony of Alejo Hernandez who had already pled guilty to the murder. Adcox asked Hernandez

Q "Was I the person that was with you when you killed Mr. Moreno?"

A "No, you weren't."

At the close of evidence, after the jury had been instructed and was deliberating, the foreman sent a question to the judge asking "Did Alejo Hernandez make the statement that Ronald Adcox was not the individual that entered the cell at the time of the murder?" After conferring with both counsel, the trial judge refused to answer the question for the jury and instead instructed them: "The court cannot comment on the evidence and you must rely on your memory as to the evidence." The jury subsequently returned a guilty verdict as to the defendant Adcox on both the murder and the conspiracy to commit murder counts.

## II. *ISSUES*

The defendant argues that the court abused its discretion in refusing to read the transcript back to the jury concerning Hernandez's testimony. The defendant also argues that the court erroneously denied his motion *in limine* seeking to exclude the testimony of Jack Lopes.

## III. *DISCUSSION*

### A.[1]

■ The defendant Adcox maintains that we should review the court's refusal to an-

---

1. This court released an opinion in this case on January 11, 1994. At that time the record contained no transcript of the proceedings that took place concerning the court's response to the jury's question. The official transcript merely set forth the question from the jury (Court Exhibit

swer the jury's question for an abuse of discretion. *See United States v. Guy*, 924 F.2d 702, 708 (7th Cir.1991) ("The decision to deliver testimony of a witness to the jury during its deliberations is 'a matter purely within the trial court's discretion.'") (quoting *United States v. Keskey*, 863 F.2d 474, 476 (7th Cir.1988)). The government argues that the defendant failed to object to the court's refusal to answer the jury question and thus our review should be for plain error. *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988) ("[t]o preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection ... [n]either a general objection to the evidence nor a specific objection on other grounds will preserve the issue for review"). A review of the transcript reveals that the defendant did express a preference for the court to read the transcript of the relevant testimony to the jury but the judge decided that he would not "comment on the evidence and [they] must rely on [their] memory as to the evidence." When the court inquired if there were any objections to this answer the *pro se* defendant replied, "No, sir."[2] Accordingly, we review the court's refusal to read the transcript to the jury for plain error. *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993); *Wynn*, 845 F.2d at 1442.

There are several factors that the courts have considered when determining whether the trial court erred in refusing to answer a question from a jury during their deliberations. We have stated that a district court does not abuse its discretion when it refuses to grant a jury request for witness testimony if doing so "would unduly highlight that testimony" and give an advantage to one party in the litigation over the other. *Guy*, 924 F.2d at 708. In *Guy*, we also noted that "the length of the trial was short, and thus the jurors' memory of [the] testimony should be sufficiently fresh." *Id.* Moreover, when the trial court answers a question from the jury it "has a duty to answer a jury's question with 'concrete accuracy.'" *United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir.1989) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)).

The defendant refers us to two decisions from other circuits as support for his argument that the trial court erred. In *United States v. Zarintash*, 736 F.2d 66 (3rd Cir. 1984), the Third Circuit held that a trial court abuses its discretion when it refuses to read requested portions of transcript unless the "requests to read testimony may slow the trial where the requested testimony is lengthy" or when "reading only a portion of the testimony may cause the jury to give that portion undue emphasis." *Id.* at 70. In *United States v. Almonte*, 594 F.2d 261 (1st Cir.1979), the First Circuit held "the court can and should take into consideration the reasonableness of the jury's request and the difficulty of complying therewith." *Id.* at 265. Based on *Zarintash* and *Almonte*, the defendant argues that the jurors' request was reasonable and the court without any problem could have complied with the request. Adcox maintains that there was no danger of unduly delaying the proceedings as "[t]he Judge could have answered the jury's

No. 1) and the court's response (Court Exhibit No. 2). In our January 11, 1994 decision, we criticized the trial court and respective counsel for failing to have the entire proceeding transcribed. After our opinion was released, Judge Brooks, the trial judge properly expressed concern at our comments that the proceeding had not been transcribed and saw to it that a copy of the proceeding was forwarded to this panel. (We have since obtained the certified transcript).

Several comments are in order. We have not discovered why the court reporter certified the transcript as being a "true and accurate transcription of these proceedings" when it failed to include a crucial proceeding held in open court. In the absence of any other explanation, we can only assume that the court reporter forgot to include this proceeding in the transcript. We do not fault the court reporter alone for this error, rather it is the attorneys, who are representing the respective litigants, that share the responsibility along with the court clerk to make sure that the entire court record is transmitted to the appellate court for review. This is especially true when the proceeding not included in the transcript deals with the very issue presented on appeal and also directly impacts the proper appellate standard of review.

**2.** The defendant acted as his own trial attorney with standby counsel seated alongside him throughout the trial.

question with a one word answer and it wouldn't have taken him 30 seconds for the Court Reporter to go back through her stenographers notes to provide that answer." Appellant's Brief at 11. Finally, the defendant argues that because the jury's question was "[t]he 64 million dollar question, the most important question in the entire trial," *id.* at 13, the court should have answered it.

The government replies that the trial judge did not err in refusing to answer the jury's question because answering the question with a simple "yes" or "no" might have been misleading and out of context, *United States v. Martel,* 792 F.2d 630, 637 (7th Cir. 1986), and further it might have unnecessarily highlighted Hernandez's testimony to the neglect of other evidence. *Guy,* 924 F.2d at 708; *Zarintash,* 736 F.2d at 70.

We are of the opinion that the trial judge did not commit plain error. A simple "yes" or "no" answer would have misled the jury for a one word answer all too often fails to accurately recount the accompanying circumstances and would have given an unfair advantage to the defendant by highlighting and focusing on the testimony of a single witness rather than the testimony of all the other witnesses to the event in question. Thus a one word answer would not have responded to the jury's question with "concrete accuracy." *Franco,* 874 F.2d at 1143. Moreover, contrary to the defendant's assertion, a simple "yes" or "no" answer would not have sufficed, for the jury's question of the judge was somewhat different from the question Adcox asked of Hernandez at trial during his direct examination.[3] The jury's question was "[d]id Alejo Hernandez make the statement that Ronald Adcox was not the individual that entered the cell at the time of the murder." The correct answer to the jury's question is "no" because Adcox never asked that question during direct examination. Had the judge answered "yes" to the jury's question he would have been placing evidence before the jury that was not presented at trial, i.e., that "Ronald Adcox was not the individual

that entered the cell at the time of the murder." *See United States v. Neff,* 10 F.3d 1321, 1326 (7th Cir.1993) (reversing a criminal conviction because the trial court answered a deliberating jury's question "with facts not in evidence"). Accordingly, a simple "yes" or "no" would have been an inaccurate account of the facts and circumstances surrounding the murder. It is well-known that a simple "yes" or "no" answer is frequently, even in run-of-the-mill conversations, wholly inadequate to give a complete and accurate recitation of an event. "Although the judge must endeavor to dispel the jury's confusion, he or she need not respond to its questions with unqualified answers, especially where an unqualified answer might mislead the jury." *United States v. Keck,* 773 F.2d 759, 768 (7th Cir.1985).

While it is certainly acceptable for the court to have a portion of the transcript read to the jury in response to a jury request, it would have been improper in this situation to read that small segment of the testimony from the transcript as it would run the risk of emphasizing and focusing on certain aspects of Hernandez's testimony over other portions as well as highlighting his testimony over that of a number of other credible witnesses. To avoid the risk of emphasizing Hernandez's testimony, the judge could have directed the court reporter to read from the testimony of each witness who testified about the events surrounding the murder but clearly that would have involved an unnecessary delay in the trial proceedings as well as putting the court in the position of becoming the factfinder (picking and choosing which portions of testimony are relevant).

Lastly, the judge properly instructed the jury, that "[t]he Court cannot comment on the evidence and you must rely on your memory as to the evidence." Hernandez had testified but a mere twenty-four hours before and was in fact the last defense witness in a very short (two and one-half days of evidence) trial. If the testimony of Hernandez was indeed the "64 million dollar question" as

---

3. Adcox asked Hernandez at trial on direct examination

Q "Was I the person that was with you when you killed Mr. Moreno?"

A "No, you weren't."

defendant maintains, the jury certainly should have remembered it. Moreover, the defendant had ample opportunity to reiterate the "64 million dollar question" and answer during his closing argument but obviously failed to convince the jury. After the jury is in deliberation, it certainly is not the trial judge's responsibility to atone for the shortcomings of the closing argument and explain either party's side of the case through a simple "yes" or "no" answer to a question concerning a statement never elicited during direct or cross-examination. Such a practice might possibly give an advantage to one party to the litigation. Therefore, we hold that the judge's decision refusing to answer the jury's question was not an abuse of discretion much less plain error.

### B.

■■■ The defendant also argues that the trial court erred in denying his motion *in limine* which sought to exclude the testimony of Jack Lopes who was the only government witness who viewed the defendant strangling the victim. We give great deference to the evidentiary rulings of the trial judge because he has the best opportunity to observe the witness and weigh his credibility as opposed to "merely looking at the cold pages of an appellate record." *E.g., United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993). We will only reverse evidentiary rulings if the court abused its discretion. *United States v. Lofton,* 957 F.2d 476, 477 (7th Cir.1992). Likewise, we review the denial of a motion for a new trial based on the prosecution's alleged use of perjured testimony under an abuse of discretion standard. "We will not disturb the trial court's ruling on the motion 'unless there has been an error as a matter of law or a clear and manifest abuse of judicial discretion.'" *United States v. Douglas,* 874 F.2d 1145, 1159 (7th Cir.1989) (quoting *United States v. Kaufmann,* 803 F.2d 289, 291 (7th Cir.1986)), *cert. denied sub nom. Pruitt v. United States,* 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989).

■■■ "A new trial should be ordered, on the basis of the prosecution's use of perjured testimony, if the defendant establishes that 1) the prosecution's case included perjured testimony; 2) the prosecution knew, or should have known, of the perjury; and 3) there is any likelihood that the false testimony could have affected the judgment of the jury." *Douglas,* 874 F.2d at 1159 (citing *Napue v. Illinois,* 360 U.S. 264, 269–71, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959); *Kaufmann,* 803 F.2d at 291). However, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Verser,* 916 F.2d 1268, 1271 (7th Cir.1990) (quoting *United States v. Griley,* 814 F.2d 967, 971 (7th Cir.1987)). Moreover, the alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence. *Id.; see also Douglas,* 874 F.2d at 1160 ("the complained of discrepancies went to immaterial and collateral issues"). Finally, when a defendant alleges that the prosecution used perjured testimony, our decisions have inquired into whether the defendant had adequate opportunity to expose the alleged perjury on cross-examination. *Douglas,* 874 F.2d at 1160; *United States v. Santiago,* 798 F.2d 246, 247 (7th Cir.1986).

Initially, we note that Adcox had an ample opportunity to thoroughly cross-examine Lopes during the first and second trial. Nonetheless, Adcox alleges that Lopes perjured himself in the first trial and should not have been permitted to testify in the second trial. To support his allegation, Adcox claims that the Assistant U.S. Attorney in the first trial informed the jury during closing argument that "he did not believe the witness Jack Lopes, [and] that he believed Lopes was involved in the murder plot of Luis Moreno and was not just simply an innocent bystander." Appellant's Brief at 16.

Based on the case law recited above, we are of the opinion that the trial court properly denied the defendant's motion *in limine.* The defendant has failed to present any evidence that Jack Lopes committed perjury, much less that the government knew he was perjuring himself. To support the claim that Lopes committed perjury, Adcox directs our attention to the prosecution's closing argument in the first trial where the Assistant U.S. Attorney ("AUSA") supposedly ex-

pressed his doubt about Lopes' veracity. Our review of that record reveals no such statement by the AUSA. The AUSA merely explained to the jury that Lopes had a real incentive to come forward and identify Adcox and Hernandez because he feared that someone might implicate him (Lopes) for he was in close proximity to the murder. But nowhere in the closing argument did the AUSA state that he believed Lopes was involved in the murder.

Adcox also argues that Lopes has offered inconsistent statements to the FBI and prison authorities, before the Grand Jury, in the first trial and in the second trial. The defendant, however, fails to provide any specific examples of the alleged inconsistencies. Even if Lopes did offer inconsistent versions of the event, as previously mentioned, mere inconsistencies fall short of establishing perjury much less that the government knowing employed the use of perjured testimony. As stated above, for perjured testimony to necessitate a retrial, it must relate to a material fact as opposed to some collateral issue. Adcox alleges that Lopes' perjury concerned *his (Lopes')* role in the murder but makes no allegation that Lopes testified untruthfully regarding *Adcox's* role. Lopes testified that he was outside cell 104 on the evening of the murder, looked in the window, and saw Adcox strangling Moreno while Hernandez held down the victim's legs. Two other inmates testified that they saw Hernandez and Adcox enter cell 104 and that they saw Lopes nervously pacing outside the cell and occasionally looking in the window. Whether Lopes was acting as a lookout or whether he was just a curious spectator makes little difference in the jury's determination that Adcox and Hernandez were the only two persons who entered the cell and attacked Moreno in the violent manner that caused his demise. Finally, as we stated above, even if we assume that Lopes had perjured himself, which is not supported on the record before us, Adcox had ample opportunity to discredit Lopes and expose any alleged perjury during the course of the trial.

For the reasons stated above, the trial court's denial of the defendant's motion *in limine* was proper.

## CONCLUSION

The conviction of Ronald Adcox is AFFIRMED.

FOREMAN, District Judge, concurring.

While I fully agree with the panel's analysis of the merits of this appeal and join the decision to affirm Ronald Adcox's conviction, I write separately to clarify my position with respect to the comments in footnote 1. In my view, the responsibility for assuring that the court of appeals is provided with a complete and accurate transcript of the district court proceedings falls primarily upon the court reporter and the attorneys rather than upon the clerk of the court. Rule 11(b) of the Federal Rules of Appellate Procedure provides that "[w]hen the record is complete for purposes of the appeal, the clerk of the district court shall transmit it forthwith to the clerk of the court of appeals." Fed. R.App.P. 11(b). This rule requires the district court clerk to transmit all of the items that are required to be part of the record— i.e., "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court." Fed.R.App.P. 10(a). But the rule does not require the clerk of the district court to verify the contents of the transcript of the proceedings—particularly where the court reporter has certified that the transcript is "true and accurate."