**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Derrick ELLIS, Defendant–Appellant.**

No. 93–1729.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1994.

Decided May 12, 1994.

Barry R. Elden, Asst. U.S. Atty., Matthew C. Crowl (argued), Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Jordan T. Hoffman, Boyd & Associates, Fe'Lesia M. Newberry (argued), Law Offices of Newlegal, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Derrick Ellis was a letter carrier for the United States Postal Service. In May 1992, he was charged with unlawfully possessing stolen mail in violation of 18 U.S.C. § 1708, and with selling three stolen United States Treasury checks in violation of 18 U.S.C. § 510(b). Mr. Ellis raised an entrapment defense, but the jury was not persuaded and found him guilty as charged. Mr. Ellis now appeals. For the reasons that follow, we affirm.

I

BACKGROUND

Sometime in late March 1992, Ronald Rolark, a government confidential informant, approached Mr. Ellis in the vicinity of 86th

Street and Ashland Avenue in Chicago. (Rolark testified that they met at a gas station; Mr. Ellis stated that it was a sandwich shop.) Mr. Ellis was in his postal uniform and had parked his postal truck nearby. Mr. Ellis and Rolark, who had never previously met, were engaged in small talk when Rolark stated that Mr. Ellis had "all of the money right there," referring to the postal truck. Tr. 108. According to Rolark, Mr. Ellis asked what he could do about it, at which time Rolark told him that he knew someone who could "get rid of the checks." Tr. 109. Mr. Ellis responded by asking Rolark what kinds of amounts Rolark was talking about, because he did not "mess with nothing small." Tr. 109. Rolark told Mr. Ellis that his contact could likely handle whatever Mr. Ellis could get. At this point of the conversation, Mr. Ellis told Rolark that he would have to get back to him. Although Mr. Ellis refused to give Rolark his telephone number, Rolark gave Mr. Ellis his telephone number. Each man then went on his way.

According to Rolark, Mr. Ellis telephoned him about a week after their first meeting. Mr. Ellis informed Rolark that he had a $7,500 check and wanted to know if Rolark's contact could take it off his hands at half the check's face value. Mr. Ellis had stolen the check, which was to be delivered to an address on his route, sometime around April 3, 1992. Tr. 183–84 (cross-examination of Mr. Ellis). Rolark stated that he was not sure how much his contact would pay for the check, but would find out. Mr. Ellis then called Rolark twice over the next couple of days to find out if Rolark had talked to his contact. Although Rolark told Mr. Ellis that he was still trying, the two decided in the course of the second call to set up a meeting the next day, April 9, 1992, at a McDonald's to make the transaction.

After Mr. Ellis once again called Rolark on the morning of April 9 to confirm the meeting, Rolark and Postal Inspector Thomas Walton, acting undercover in the guise of a construction worker named "Tony," met with Mr. Ellis in the McDonald's restroom. Mr. Ellis pulled out his personal checkbook, removed a United States Treasury check in the amount of $7,500, and handed it to Inspector

Walton. Although Inspector Walton told Mr. Ellis that he would pay him 35 percent of the check's face value (the going street rate), he said that he could only give him $700 at that time. To reassure Mr. Ellis that he would get his money and that he was not a postal inspector, Inspector Walton gave Mr. Ellis his beeper number and his phone number. Some of the conversations between Mr. Ellis and Inspector Walton that subsequently took place were recorded and played to the jury at Mr. Ellis' trial.

Over the next few days, Mr. Ellis attempted to telephone and to page Inspector Walton repeatedly. When Mr. Ellis was finally able to get in touch with Inspector Walton, Mr. Ellis expressed his interest in getting the remainder of his money and in stealing more checks. The two decided to meet in a supermarket parking lot on the evening of April 13, 1992, at which time Inspector Walton gave Mr. Ellis $1,000 toward full payment for the first check Mr. Ellis had sold to him. Mr. Ellis again expressed his desire to engage in more stolen check transactions. Several days later, Mr. Ellis telephoned Rolark. Mr. Ellis asked Rolark about the rest of his money and told Rolark that he had another check to sell. Rolark, however, told Mr. Ellis that from that point on he should deal directly with Rolark's contact.

On April 20, 1992, Mr. Ellis paged Inspector Walton, who returned the call. Mr. Ellis told him that he had two checks he wanted to sell, one for $1,300 and one for $800. The next day, the two men met again in a McDonald's restroom. Mr. Ellis handed Inspector Walton the two treasury checks, and Inspector Walton gave Mr. Ellis $700, the approximate value of the checks on the street. Mr. Ellis told Inspector Walton that he had stolen the checks from his postal route, and that he would be stealing more in the future. After Mr. Ellis left the restroom, postal inspectors arrested him and advised him of his *Miranda* rights. Mr. Ellis, however, waived those rights and gave a written statement in which he confessed to stealing and selling the three treasury checks.

At trial, Mr. Ellis' testimony differed somewhat, although not in essential part, from the rendition given by the government's

witnesses. Mr. Ellis stated that, when Rolark first informed him about how he had a contact who could get rid of checks, Rolark told him about all that Mr. Ellis could do with the money he would make stealing checks—pay cash for the $45,000 car Mr. Ellis wanted, get his own apartment, and "get all the girls." Tr. 166. Mr. Ellis testified that Rolark also stated that Mr. Ellis "would be helping out a brother." *Id.* Mr. Ellis also stated that Rolark told him at that first meeting that Mr. Ellis did not have to worry about anything because Rolark's contact would take all the risk. Further, in contrast to Rolark's testimony, Mr. Ellis testified that Rolark approached him on four separate occasions following their first encounter, all at the same sandwich shop. Each time Rolark would inquire as to whether Mr. Ellis was ready to start stealing checks, and each time Mr. Ellis would say no. Finally, according to Mr. Ellis, he telephoned Rolark and agreed to sell a check. The rest of Mr. Ellis' account does not differ materially from the government's.

On November 6, 1992, a jury found Mr. Ellis guilty of one count of unlawful possession of stolen mail in violation of 18 U.S.C. § 1708 and three counts of selling stolen treasury checks in violation of 18 U.S.C. § 510(b). Prior to the jury's deliberations, the district court had denied the defendant's motion for a verdict of acquittal on grounds of entrapment. In doing so, the court expressed uncertainty as to whether it should give an entrapment instruction. The court eventually decided to give an entrapment instruction based on Mr. Ellis' testimony, although its decision was of no avail to Mr. Ellis. He was sentenced to three years' probation, conditioned upon a three-month work release program, and was fined $500 and ordered to pay $1,700 in restitution.

## II

## DISCUSSION

On appeal, Mr. Ellis presents three issues for review. First, he submits that there was insufficient evidence to support the jury's finding that he was not entrapped. Second, he asserts that the district court's instruc-

tions on entrapment were erroneous and confusing. Finally, Mr. Ellis maintains that he was deprived of his Sixth Amendment right to effective assistance of counsel. We now examine each of these contentions.

### A. Sufficiency of the Evidence

■ Mr. Ellis submits that the government failed to prove beyond a reasonable doubt that he was not entrapped. He asserts that the evidence the government presented was insufficient as a matter of law to show that he was predisposed to steal and to sell government checks from his postal route. Mr. Ellis contends that if Rolark had not urged him to steal and to sell checks, he would not have done so. *Cf. Jacobson v. United States,* —— U.S. ——, —— n. 3, 112 S.Ct. 1535, 1542 n. 3, 118 L.Ed.2d 174 (1992) (stating that the government must present "sufficient evidence to prove beyond a reasonable doubt that [the defendant] would have been predisposed to commit the crime charged independent of the Government's coaxing"). In assessing an insufficiency of the evidence argument, we " 'review the evidence in the light most favorable to the government, and if we determine that a rational jury could have found the defendant guilty, we will affirm the conviction.' " *United States v. Nururdin,* 8 F.3d 1187, 1192 (7th Cir.1993) (citation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1328, 127 L.Ed.2d 676 (1994). A defendant seeking reversal of his conviction on the basis of insufficient evidence bears a heavy burden. *Id.; United States v. Cervante,* 958 F.2d 175, 178 (7th Cir.1992).

■ The defense of entrapment consists of two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *United States v. Santiago–Godinez,* 12 F.3d 722, 728 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1630, 128 L.Ed.2d 354 (1994); *United States v. Groll,* 992 F.2d 755, 758 (7th Cir.1993); *United States v. Haddad,* 976 F.2d 1088, 1094 (7th Cir.1992). Once the defendant presents sufficient evidence tending to show that the

government induced him to break the law, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by the Government agents." *Jacobson,* —— U.S. at ——, 112 S.Ct. at 1540; *Groll,* 992 F.2d at 759. The government can also defeat a defendant's colorable entrapment defense by proving the absence of government inducement beyond a reasonable doubt. *Santiago–Godinez,* 12 F.3d at 728; *Cervante,* 958 F.2d at 178.[1] However, as we stated in *Groll,* 992 F.2d at 759, the *Jacobson* Court recognized that inducement and predisposition are not entirely separate inquiries: "[W]here the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson,* —— U.S. at ——, 112 S.Ct. at 1541.

■ Examining the evidence in the light most favorable to the government, as we must in a sufficiency challenge, we conclude that the government presented sufficient evidence to permit a jury to determine beyond a reasonable doubt that Mr. Ellis was not entrapped. According to government testimony, Rolark approached Mr. Ellis only one time before Mr. Ellis decided to start stealing checks from his postal route and selling them to Rolark's "contact." By contrast, in *United States v. Caban,* 962 F.2d 646, 649 (7th Cir.1992), we intimated that three phone calls urging a defendant to buy cocaine after an initial refusal likely did not constitute inducement. Moreover, the government offered Mr. Ellis no extraordinary promises to commit the criminal acts for which he was convicted—"the sorts of promises that would blind the ordinary person to his legal duties." *United States v. Evans,* 924 F.2d 714, 717 (7th Cir.1991). Inspector Watson purchased the checks from Mr. Ellis at approximately the street market value. *See United States v. Teague,* 956 F.2d 1427, 1434 (7th Cir.1992) (finding no unusual opportunity when market rates were offered). Even Mr. Ellis' own

testimony that Rolark spoke about what could be obtained with the proceeds from stealing and selling checks (a car, an apartment, etc.) constituted no more than elaboration on what the ordinary fruits of his criminal acts could bring him.

In short, Mr. Ellis was merely afforded a source of demand for checks that he could steal from his postal route. He was offered no more than an ordinary opportunity to commit a crime. *See Jacobson,* —— U.S. at ——, 112 S.Ct. at 1541; *Mathews,* 485 U.S. at 66, 108 S.Ct. at 888; *see also Evans,* 924 F.2d at 717 (discussing government's offer of a source of supply for drugs as an ordinary opportunity). Mr. Ellis' lack of reluctance to commit the crime was more than sufficient evidence to demonstrate his predisposition to the jury. *See Jacobson,* —— U.S. at ——, 112 S.Ct. at 1541; *see also Haddad,* 976 F.2d at 1095 (stating that reluctance is the most important factor in evaluating predisposition).

Mr. Ellis nonetheless emphasizes that, in light of his heretofore clean record, the government has not proved that he was predisposed to steal and to sell checks before the government lured him into criminal activity. Mr. Ellis relies on *Jacobson,* —— U.S. at ——, 112 S.Ct. at 1543: "When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene." This argument is misplaced. As we discussed above, *Jacobson* recognized that "an inducement must be sufficiently persistent to rebut as a matter of law the presumption of predisposition resulting from the criminal undertaking." *Groll,* 992 F.2d at 759. Absent such persistent inducement, the criminal undertaking satisfies *Jacobson* 's "but for" approach to predisposition. Here, Rolark testified that, as soon as he told Mr. Ellis that he knew someone who would buy stolen checks, Mr. Ellis responded by stating that he did not "mess with nothing small." Tr. 109. The jury was

---

1. Inducement was not at issue in *Jacobson* because the government had conceded that it induced the defendant. *Jacobson,* —— U.S. at —— n. 2, 112 S.Ct. at 1540 n. 2. As a result, the sole issue in that case was "whether the Government carried its burden of proving that petitioner was predisposed to violate the law *before* the Government intervened." *Id.*

entitled to credit that testimony and to conclude that Mr. Ellis was predisposed to stealing checks well before Rolark approached him. We therefore hold that the government proved beyond a reasonable doubt that Mr. Ellis was not entrapped.

## B. *Entrapment Instructions*

■ In addition to instructing the jury with the standard Seventh Circuit instruction on entrapment,[2] the district court read the following supplemental instruction on inducement:

> A defendant has not been "induced" to commit a crime as I have used that word unless he was offered some extraordinary promise or benefit to commit the crime. Mere solicitation by a government agent by itself is not sufficient to establish an entrapment defense. One who takes advantage of an ordinary opportunity to commit a criminal act has not been entrapped. If the ordinary profits of crime as offered by the government agent are what induced the defendant to commit the crime, that defendant has not been entrapped.

Tr. 289. The court also gave the jury a supplemental instruction on predisposition:

> Among the factors relevant in determining predisposition are the character or reputation of the defendant, including any prior criminal record; whether the suggestion of criminal activity was initially made by the government; whether the defendant was engaged in the criminal activity for profit[;] whether the defendant evidenced reluctance to commit the offense overcome only by repeated government inducement after persuasion; and the nature of the inducement or persuasion supplied by the government.

While none of these factors alone indicates either the presence or absence of predisposition, the most important factor is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated government inducement.

Tr. 289–90. Mr. Ellis' counsel objected to both instructions at trial. On appeal, Mr. Ellis contends, without elaboration, that the district erred in giving these supplemental instructions because they were "markedly confusing" and "misled the jury." Appellant's Br. at 38. He also asserts that the district court gave erroneous and confusing definitions to the jury in response to the jury's request for clarification. The district court informed the jury that "reluctance" means "unwillingness"; that "mere solicitation" means "merely asking; merely seeking to obtain by persuasion"; and that "proposition" means "elements or things the government has to prove beyond a reasonable doubt." Tr. 305–10.

■ We cannot accept Mr. Ellis' argument. First, the supplemental instructions were in accordance with the law of entrapment as this circuit has enunciated it. We agree with the government that the supplemental instruction on inducement simply restated our discussions of the topic in *United States v. Teague,* 956 F.2d 1427, 1435 (7th Cir.1992), *United States v. Evans,* 924 F.2d 714, 717 (7th Cir.1991), and *United States v. Blackman,* 950 F.2d 420, 424 (7th Cir.1991). *See also United States v. Penson,* 896 F.2d 1087, 1090 (7th Cir.1990) (stating that "substantial discretion is given to the trial court with respect to the specific wording of the instructions"). Similarly, the supplemental instruction on predisposition restated almost verbatim a common five-part test this circuit

**2.** Seventh Circuit Criminal Instruction 4.04 states:

> One of the issues in this case is whether the defendant was entrapped. A defendant who has been entrapped must be found not guilty.
> If the defendant had no prior intention or predisposition to commit the offense charged and was induced or persuaded to do so by law enforcement officers or their agents, then he was entrapped. If, however, the defendant had a prior intent or predisposition to commit the offenses charged, then he was not en-

trapped even though law enforcement officers or their agents provided a favorable opportunity to commit the offense, made committing the offense easier, or even participated in acts essential to the offense.

In determining whether the defendant had a prior intent or predisposition to commit the offense charged, you may consider the personal background of the defendant as well as the nature and degree of any inducement or persuasion of the defendant by law enforcement officers or their agents.

has used to evaluate predisposition. *See, e.g., United States v. Santiago–Godinez,* 12 F.3d 722, 728 (7th Cir.1993); *United States v. Haddad,* 976 F.2d 1088, 1095 (7th Cir.1992); *United States v. Jones,* 950 F.2d 1309, 1314 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992). Finally, with respect to the district court's definitions given in response to the jury's request for clarification, we note that district courts "have a duty 'to strive conscientiously to clear up any [jury] confusion.'" *United States v. Martel,* 792 F.2d 630, 637 (7th Cir. 1986) (citation omitted). Moreover, we "leave to the sound discretion of the trial judge the extent and character of its response." *Id.* In this case, the district court in no way abused that discretion by attempting to aid the jury in its deliberations with simple explanations of a few terms used in its instructions. Notably, Mr. Ellis fails to inform us, and we fail to see, why these definitions were either erroneous or confusing.

## C. *Ineffective Assistance of Counsel*

 Mr. Ellis also raises a Sixth Amendment claim of ineffective assistance of counsel. He argues his trial counsel's failure to call any witnesses to testify concerning his character deprived him of effective assistance of counsel. He states that, if his counsel had called upon his mother and his postal supervisor to testify, the jury could have inferred from their testimony on Mr. Ellis' character that he lacked the requisite predisposition to commit the crimes charged.

The problem with Mr. Ellis' argument is that we do not know the substance of the testimony his mother and particularly the postal inspector would have given if Mr. Ellis' counsel had called them. The record in this case on this issue is not sufficiently developed to consider adequately Mr. Ellis' claim. *See United States v. Lang,* 644 F.2d 1232, 1240 (7th Cir.) (stating that if "an examination of the record does not provide clear evidence of the ineffective assistance of counsel," the "problem is not ripe for adjudication at the appellate level"), *cert. denied,* 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). That is precisely why, as a general rule, we "prefer[] not to consider ineffective

assistance of trial counsel claims raised for the first time on appeal." *United States v. Badger,* 983 F.2d 1443, 1458 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). Rather, "[i]n direct appeals of criminal convictions, ineffective assistance of counsel claims are best dealt with at the district court level, either through a motion for new trial, *see* Fed.R.Crim.P. 33, or through the collateral relief available under 28 U.S.C. § 2255." *United States v. Reiswitz,* 941 F.2d 488, 495 (7th Cir.1991); *see also United States v. Booker,* 981 F.2d 289, 292 (7th Cir.1992) (same). We therefore decline to entertain Mr. Ellis' ineffective assistance argument; he may raise the argument in a § 2255 petition if he so desires.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.