**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth FERGUSON, Robby Morse, and Ricky Morse, Defendants–Appellants.**

**Nos. 93–2762, 93–2774 and 93–2775.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1994.

Decided Sept. 15, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 26, 1994.

---

Frances C. Hulin, U.S. Atty., Rodger A. Heaton, Asst. U.S. Atty. (argued), Springfield, IL, for U.S.

Bill T. Walker, Craig H. DeArmond, Kurth, Wolgamot & Dearmond, Danville, IL (argued), for Kenneth Ferguson.

Jeffrey B. Steinback, Andrew M. Plunkett (argued), Genson, Steinback, Gillespie & Martin, Chicago, IL, for Robby L. Morse and Ricky L. Morse.

Before SPROUSE,* CUDAHY and KANNE, Circuit Judges.

---

* The Honorable James M. Sprouse, Circuit Judge, United States Court of Appeals for the Fourth Circuit, sitting by designation.

KANNE, Circuit Judge.

The defendants, Kenneth Ferguson, Robby Morse, and Ricky Morse, were charged with conspiring to distribute cocaine following an FBI investigation initiated by Ferguson's ex-wife. Ferguson was also charged with money laundering and tax evasion.

The defendants were convicted of the offenses charged, and the evidence at trial discloses the following. In 1986 Ferguson engaged in the sale of cocaine in and around Decatur, Illinois. The Morse brothers, Ricky and Robby would pick up cocaine at Ferguson's house and then pay for it later, after they had sold it. To assist the Morses in their drug dealing, Ferguson bought them motorcycles. He also leased a pager for Ricky and made the payments on the lease.

Ferguson also supplied cocaine to several other individuals, including Michael Barry. Barry was introduced to Ferguson by one of the Morse Brothers in late 1987. Ferguson wanted Barry to finance the purchase of one kilogram of cocaine. Barry did not finance the purchase, but began obtaining cocaine from Ferguson early the next year. Ferguson placed the cocaine at a prearranged location and Barry would then collect it. Ferguson would come by later and pick up the money for the cocaine. Barry contacted Ferguson to set up the delivery by the use of a pager. If Barry could not reach Ferguson, he would place an order for cocaine through either Ricky or Robby Morse. Barry received and distributed four or five ounces every five to seven days, paying Ferguson $1,100 per ounce.

In May of 1989, Barry was apprehended by Illinois State Police en route to purchase cocaine in Chicago, and he agreed to cooperate with the government. On June 1, 1989, Barry introduced undercover agent Lance Dillon to the Morse brothers. Dillon offered to purchase an ounce of cocaine from Ricky Morse. Morse said that he would have to "get ahold [sic] of his man" and that they would have to wait for "Kenny" to return with the cocaine. Later, Ferguson and Morse arrived in Ferguson's truck, and Robby Morse sold an ounce of cocaine to agent Dillon for $1,100.

Two weeks later, Dillon again approached Robby to purchase an ounce of cocaine. Robby told Dillon that he could get the cocaine from Ferguson the next day and that the price had risen to $1,350, because Ferguson had bought a house and was now buying cocaine in smaller quantities. Dillon did not follow up this request.

On August 11, 1989, Dillon called Robby Morse to arrange another drug buy. Morse said he needed the money up front because Ferguson refused to front the cocaine to him. Dillon met Robby and gave him the money. Police officers observed Robby drive to a parking lot where he met Ferguson, who was waiting in his truck. They met briefly, then Robby returned to where Dillon was waiting. Robby showed Dillon three one-ounce bags of cocaine and told him to take whichever one he wanted. Robby also told Dillon to call him when he needed more cocaine.

Ferguson took various steps to launder the proceeds of his drug sales. He gave cash to other people in exchange for checks made out to him or to his construction business, or in exchange for money orders or cashier's checks. Ferguson also purchased cashier's checks and money orders using other people's names. Ferguson spent many thousands of dollars in cash on real property, jewelry, guns, vehicles, show horses, and imported dogs.

To recount, the three defendants were charged with conspiracy to distribute cocaine from mid–1987 through January 1990. Ferguson was also charged with five counts of money laundering and two counts of tax evasion. Following their convictions, Ferguson received a sentence of 188 months imprisonment; Ricky Morse was sentenced to 78 months of imprisonment; and a sentence of 70 months imprisonment was imposed on Robby Morse. Ferguson's motion for a new trial on the basis of newly discovered evidence was denied. All appeal their convictions and sentences.

The defendants claim that there was insufficient evidence to prove the existence of a conspiracy involving them. To find that the evidence was insufficient, we must conclude that no rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Goines*, 988 F.2d 750, 758 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). We view the evidence in the light most favorable to the government. *Id.* We do not reweigh evidence or assess the credibility of witnesses. *United States v. Dortch*, 5 F.3d 1056, 1065 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994).

A conspiracy is a combination of two or more persons who join together for the purpose of committing a criminal act by their joint efforts. *United States v. Whaley*, 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). To convict for conspiracy, the government must demonstrate by substantial evidence, which may be entirely circumstantial, that a conspiracy existed and that the defendant knowingly agreed to join it. *United States v. Pazos*, 993 F.2d 136, 139 (7th Cir.1993).

In this case the conspiracy alleged was that Ferguson sold cocaine to the Morses (among others), who in turn resold it. The delivery of drugs with an agreement to pay for them after a subsequent sale is typically referred to as "fronting." In *Dortch*, 5 F.3d at 1065, we held that an ongoing relationship involving numerous purchases and fronting of drugs indicated the existence of a conspiracy. We have noted that prolonged cooperation in selling drugs is a factor in inferring a conspiracy because it shows that the parties had joined in an illegal enterprise to "make its accomplishment possible." *United States v. Lechuga*, 994 F.2d 346, 350 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).

Sale for personal use by the purchaser of cocaine is not sufficient to demonstrate the existence of a conspiracy, but sale for later resale is. *United States v. Kozinski*, 16 F.3d 795, 808 (7th Cir.1994). It is argued that the relationship between Ferguson and the Morses was merely one between a seller and two non-conspiratorial purchasers of cocaine. The jury, of course, was correctly instructed that a mere buyer-seller relationship could not establish a conspiracy. However, evidence of providing cocaine "up front" may establish the existence of a conspiracy to distribute, because it suggests that the seller has an interest in the success of the buyer's re-selling activities, and because it indicates cooperation and trust rather than an arm's length retail-type sale. *See United States v. Saunders*, 973 F.2d 1354, 1360 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993). In fact, the repeated "fronting" of cocaine, alone, has been held sufficient to support the jury's conclusion that the defendant had knowingly joined a distribution conspiracy. *United States v. Cabello*, 16 F.3d 179, 182 (7th Cir. 1994); *see also Dortch*, 5 F.3d at 1070. In an ongoing relationship, Ferguson routinely "fronted" cocaine to others for resale. In addition to the "fronting" to the Morses and Michael Barry, the evidence shows that Brian Bailey would pick up cocaine from Ferguson, and then after it was sold Bailey would pay Ferguson an agreed $1,000 per ounce. Bailey began buying one ounce per week in 1988, and he later increased his purchases to up to four ounces per week. Several times a week, Ferguson would also front Jerry Peters an ounce of cocaine for resale.

Although Ferguson testified that he never sold drugs to anyone and those witnesses who said he did were lying, the jury could reasonably have concluded that Ferguson had, indeed, fronted cocaine to Ricky Morse, Robby Morse, Michael Barry, Brian Bailey, and Jerry Peters for subsequent sale. There was sufficient evidence for a rational trier of fact to determine that a conspiracy to distribute cocaine existed and that Ferguson and the Morses knowingly joined and participated in that conspiracy.

Ferguson also argues that the district court erred when it denied his motion for a new trial in which he alleged newly discovered evidence. We will not reverse unless there has been an error as a matter of law or a clear and manifest abuse of discretion. *United States v. Adcox*, 19 F.3d 290 (7th Cir.1994). Ferguson claims that new evidence demonstrates that there was false testimony at trial. In *Adcox* we held that a new trial should be ordered if defendant

establishes that (1) the prosecution's case included perjured testimony, (2) the prosecution knew or should have known of the perjury, and (3) there is any likelihood that the false testimony could have affected the judgment of the jury. Furthermore, the perjured testimony must be directly related to the defendant's guilt or innocence and must relate to material facts rather than collateral issues. *Id.* at 295. We also noted in *Adcox* that mere inconsistency in testimony does not establish that there was perjury, or that the government was aware of any perjury.

At the hearing on the motion, Ferguson offered as his "new evidence" the affidavits of Shelby Ferguson and Jerry Peters, two persons who testified against him at trial. Shelby Ferguson's affidavit stated that her trial testimony was true but that (1) she had no exact knowledge of drug weights, and that the amounts she had testified to had been suggested to her by the police, (2) she was aware of only one or two trips to Chicago with Kenneth Ferguson to purchase drugs, and (3) that she had no knowledge of any drug dealing involving Ferguson or the Morse brothers.

This affidavit did not vary from Shelby Ferguson's trial testimony in any decisive way. At trial she mentioned only one or two trips to Chicago. She testified that Kenneth Ferguson had brought $15,000 on these trips and that he purchased a kilogram of cocaine for that amount. At trial she claimed not to recall the participation of the Morse brothers in the distribution of the drugs.

Peters's affidavit stated that he could not accurately recall the quantities of cocaine purchased, and that the amounts he testified to at trial had been suggested to him by the police. He also stated that he knew of no arrangement between Ferguson and the Morses to sell cocaine.

Ferguson also produced a police report indicating that Peters was arrested for drug offenses after the trial, which contradicted his trial testimony that he had not been a drug user since 1991. This evidence did not, and could not, establish that Peters committed perjury in his trial testimony.

Peters claimed in his affidavit that he provided specific drug weights because he thought he would "be in trouble" if he did not do so. He made no specific allegations that he was compelled or threatened to so testify. The district court asked Ferguson's counsel to produce Peters so that he could be questioned. Ferguson's counsel declined, noting that Peters is a "five-time convicted felon" and that he did not vouch for Peters's credibility. At this point the district court denied the motion.

 The uncertainty of the witnesses regarding drug quantities does not require a new trial. As the district court correctly noted, the amount of cocaine determined to be involved in the conspiracy is a matter only for sentencing. *United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989). So, even assuming that what Peters said about his trial testimony regarding drug quantities were true, a new trial is not required, because the quantity of drugs is not an element of the offense of conspiracy.

Ferguson claims that Peters' affidavit casts doubt on the credibility of his trial testimony, which in turn raises reasonable doubt about the existence of a conspiracy. But the material in the affidavit was not "new evidence" for this purpose, because it covered the same ground as his trial testimony, on which Peters had been extensively cross-examined. In any case, there was plenty of evidence of the existence of a conspiracy, and Peters' recantation would not by itself be enough to outweigh it.

Ferguson has not met the requirements of *Adcox.* He did not demonstrate that there was perjured testimony, or that the government was aware of perjured testimony. He is not entitled to a new trial on the basis of the "evidence" claimed to be newly discovered.

Ferguson and the Morses argue that the district court incorrectly assessed the amount of cocaine attributable to each of them for sentencing purposes. They argue that the evidence used to calculate the amounts of cocaine was unreliable and that some of the amounts attributed to them were not in furtherance of the conspiracy.

 The amount of drugs attributable to a conspiracy is a factual determination that is

made by the sentencing court. It is reversible only for clear error. *United States v. Goines,* 988 F.2d 750, 775 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). We will find clear error only when the entire body of evidence leaves us with the definite and firm conviction that a mistake has been committed. *United States v. Duarte,* 950 F.2d 1255, 1265 (7th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992).

■ Application note 12 to U.S.S.G. § 2D1.1 states that where, as in this case, "the amount [of drugs] seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial and other records, [and] similar transactions in controlled substances by the defendant...." In this case the court made such an approximation. The court may make a rough approximation, so long as it determines which guideline range is applicable to the defendant for sentencing. *United States v. Wagner,* 996 F.2d 906 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 720, 126 L.Ed.2d 685 (1994).

■ The defendants argue that the witness testimony relied on by the district court for purposes of determining quantities of cocaine was not credible. But the sentencing judge, who heard and observed the demeanor of the witnesses, is best situated to determine witness credibility. *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993). The district court's evaluation of witness credibility will not be disturbed unless it is completely without foundation. *United States v. Yanez,* 985 F.2d 371, 378 (7th Cir. 1993).

■ With respect to Ferguson, the district court employed two methods to deter-

mine that he was responsible for over five kilograms of cocaine. First, it relied on witness testimony regarding the number of trips to Chicago made by Ferguson,[1] Ferguson's admissions,[2] and Ferguson weighing and bagging cocaine. The court made very conservative estimates of the quantities attributed to Ferguson by the various witnesses, and still arrived at total of 10.5 kilograms, well over five kilograms.

Second, the district court considered the amount of money laundered by Ferguson. The district court had evidence regarding the price of cocaine at the time and was able to estimate the quantity of cocaine needed to generate the cash. The district court thereby double-checked that Ferguson's involvement exceeded five kilograms. In *Duarte,* 950 F.2d at 1265, we approved this method of calculating drug quantities for sentencing purposes. The district court did not make any clear error.

With regard to the Morses, the district court found them to be accountable for 1,173 grams of cocaine. This was apparently a combination of 173 grams specifically attributable to the Morses based on the testimony of several witnesses, and a minimum of one kilogram attributable to them because of their effort to broker a deal between Ferguson and Barry for that amount.

U.S.S.G. § 1B1.3(a)(1)(A) states that the base offense level is to be determined on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(B) notes that the base offense level is also to be determined by "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

■ The district court judge noted the objection of the Morse brothers' counsel. The objection protested that no deal was

---

1. Jerry Peters travelled to Chicago with Ferguson on five occasions. While Ferguson went indoors to make the cocaine buy, Peters remained outside with a gun to defend against any robbery attempts. Brian Bailey went to Chicago with Ferguson on one occasion. Ferguson planned to buy a kilogram of cocaine for $23,000 on that trip, but the cocaine was of poor quality and the buy did not take place.

2. Jerry Peters recalled two occasions when Ferguson stopped at a bank to withdraw money to purchase cocaine, one time withdrawing $12,000, the other time withdrawing $27,000. Ferguson told Peters that he had made $200,000 selling cocaine.

done at the time they introduced Barry to Ferguson. The district court responded, correctly, that several witnesses had testified that the Morses worked together, so that what was attributable to one could be attributed to the other, and that they could reasonably expect that at minimum there would be a one kilogram transaction between Ferguson and Barry.

Furthermore, there was substantial testimony indicating the existence of an ongoing, close relationship between the Morses and Ferguson, which is also a sufficient basis for a finding that a kilogram could be attributed to the Morses due to their role in the conspiracy. This determination was well within the broad scope allowed by U.S.S.G. § 1B1.3(a)(1)(A) and (B).

The defendants also argue that the amounts of cocaine used to determine their sentences included pre- and post-conspiracy transactions. But this is irrelevant. U.S.S.G. § 1B1.3(a)(2) states that relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." If by chance some of the testimony relied on by the district court in imposing its sentence was from outside the period of the conspiracy, there was no error. *See, e.g., United States v. Nunez*, 958 F.2d 196 (7th Cir.1992) (prior, unindicted cocaine sales were properly considered "relevant conduct" for setting offense levels under sentencing guidelines).

Ferguson argues that the district court erred in imposing a four-point increase in his base offense level because of his leadership role in a criminal activity involving five or more participants, as provided for by U.S.S.G. § 3B1.1(a). A defendant's role in the offense is a matter of fact for the district court to determine. *United States v. Camargo*, 908 F.2d 179, 185 (7th Cir.1990). Its determination is reversible only for clear error. *United States v. Colello*, 16 F.3d 193, 195 (7th Cir.1994).

The record fully demonstrates Ferguson's leadership role. For example, (1) Ferguson would travel to Chicago, buy quantities of cocaine, divide it up and parcel it out to his distributors, (2) Ferguson had Ricky and Robby Morse, Jerry Peters, Brian Bai-

ley, and Michael Barry distributing cocaine for him, (3) Ferguson's father assisted him in his money laundering, (4) Ferguson directed the movements of the Morse brothers in meeting him and delivering cocaine, and (5) Ferguson wore a pager so that he could be easily contacted by his distributors. There was no error in imposing the enhancement for Ferguson's leadership role.

Ferguson also objects to the probation officer's calculation of money laundered by Ferguson. The objection is irrelevant. The offense level for money laundering was calculated to be 28, while the offense level utilized was 32, for conspiracy. The higher of the two is applied pursuant to U.S.S.G. § 3D1.3(a). Right or wrong, the calculation had no effect on Ferguson's sentence.

Finally, Ferguson argues that the district court erred by denying his pretrial motion to dismiss the count of the indictment regarding his failure to file tax returns. But Ferguson has waived this issue. He failed to have the record of court's ruling on his motion transcribed, so review of the decision is impossible. *Stookey v. Teller Training Distributors*, 9 F.3d 631, 635–36 (7th Cir.1993).

The convictions and sentences of Ferguson and the Morse brothers are AFFIRMED.