51 F.3d 276
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Narcisso YANEZ, Defendant-Appellant.
 No. 94-2037.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 24, 1995.*
Decided March 22, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Narcisso Yanez, who was convicted of three counts of distributing heroin and one count of distributing heroin and cocaine, 21 U.S.C. Sec. 841(a)(1), claims that no rational trier of fact could find that he was not entrapped beyond a reasonable doubt. We affirm.
 
 
 2
 On June 17, 1993, a government informant introduced Yanez to Agent Alfredo Ibanez. At that meeting, Ibanez offered to purchase cocaine and marijuana from Yanez. By the end of the meeting, Yanez had alluded to prior drug sales and had given Ibanez two sample packets of marijuana. Over the next five weeks, through a series of meetings and phone calls, Yanez gave Ibanez a free sample of heroin and then sold him a five gram sample of heroin for $1200, an ounce of heroin for $5500, and two kilograms of cocaine and two and a half ounces of heroin for $59,500. At various times, Yanez referred to having other clients and at least two different sources.
 
 
 3
 Yanez claims that he never would have dealt drugs but for the insistent pleading of the government's informant, who did not testify at trial. Yanez testified that from the first time he met her, she asked him to find drugs for her to sell because her son was in prison and her injured foot left her unable to work. See Sherman v. United States, 356 U.S. 369, 374 (1958) (holding that repeated requests and resorting to sympathy constitute inducement for entrapment purposes). According to Yanez, he had initially refused because it was illegal, but she continued to ask him until he agreed. However, in a subsequent recorded conversation with Ibanez, Yanez identified the informant as "police." He said that he had refused her requests for assistance,[1] although it is not clear when these requests occurred. At trial, he admitted that he had not given the informant any of the proceeds from the heroin sales.
 
 
 4
 Yanez' trial testimony was incredible. According to Yanez, before he met the informant, a man named Renee Reyes, an acquaintance from a bar who had known him for about three weeks, unexpectedly gave him a box of drugs worth over $60,000 and departed for Mexico. The box allegedly contained no other drugs apart from those that Yanez gave to Ibanez, and the drugs were already packaged in the exact quantities in which he distributed them. Yanez testified that he had never intended to sell them, although he admitted on cross-examination that he allegedly told Reyes that he did not want the drugs in his house too long because he knew it was against the law to have drugs. The government introduced Yanez' post-arrest statement in which he had told a government agent that he received drugs from Reyes for the purpose of selling them for a commission. During this statement, he never mentioned being pressured by the informant or by anyone else to sell drugs. Furthermore, the variations in the amount of drugs available for sale to Ibanez and Yanez' other comments concerning at least two separate sources contradict his story about the box of drugs altogether.
 
 
 5
 "In assessing an insufficiency of the evidence argument, we 'review the evidence in the light most favorable to the government, and if we determine that a rational jury could have found the defendant guilty, we will affirm the conviction.' " United States v. Ellis, 23 F.3d 1268, 1271 (7th Cir.1994) (citation and internal quotations omitted). If a defendant makes a colorable claim of entrapment, the government may defeat that defense by proving beyond a reasonable doubt that either the defendant was predisposed to commit the crime prior to the approach of the government's agent, or that he was not induced by the government to commit the crime. Id. at 1271-72.
 
 
 6
 A reasonable juror could find that Yanez was predisposed to commit these crimes beyond a reasonable doubt. Although Yanez has no prior criminal record, ample evidence supports a finding of predisposition. United States v. Cervante, 958 F.2d 175, 179 (7th Cir.1992) (holding that defendant's lack of criminal record is not a crucial factor in light of other testimony concerning prior involvement with drugs). Even by his own testimony, before Yanez ever met the informant, he had been willing to break the law for Reyes, a man he barely knew, by taking possession of drugs. A rational jury could also infer from his post-arrest statement and his allusions to prior sales in his first conversation with Ibanez that he had planned and prepared to sell drugs before he met the informant. He also demonstrated knowledge of drug quality, market prices and the code language used by drug traffickers.[2] Furthermore, Yanez obtained drugs from his own sources, and thus did not need government assistance. United States v. Santiago-Godinez, 12 F.3d 722, 730 (7th Cir.) (holding that defendant's procurement of cocaine from known source without government assistance "demonstrates that he had the ability to commit the crime and thus was poised to engage in drug trafficking given the opportunity."), cert. denied, 114 S.Ct. 1630 (1994).
 
 
 7
 Apart from Yanez' testimony, the record does not reveal whether Yanez or the informant first suggested the drug deal with Ibanez, although at the first meeting itself, Ibanez offered to purchase first. In assessing predisposition, the most important factor is whether the defendant expressed reluctance to commit the offense, which was overcome by government persuasion. Id. at 728. A rational jury could reject Yanez' testimony as incredible and therefore disbelieve his self-serving virtuous protestations of reluctance. United States v. Mora, 994 F.2d 1129, 1137 (5th Cir.) (citing Masciale v. United States, 356 U.S. 386, 388 (1958) (holding that jury could reject entrapment defense by disbelieving defendant's uncontroverted testimony concerning persuasion by informant)), cert. denied, 114 S.Ct. 417 (1993). Although at some point Yanez refused the informant's request, which might be construed as asking for drugs to sell, one could infer that he had identified her as a police agent by that time and no longer wanted to risk doing business with her. Furthermore, Yanez demonstrated a clear lack of sympathy for her in response, and he also admitted that he gave her none of the proceeds from his deals with Ibanez. Thus, a rational jury could infer that Yanez was motivated by ordinary profit when he distributed drugs to Ibanez. Although the government informant may have attempted to induce Yanez, a rational jury could find beyond a reasonable doubt that Yanez was predisposed to commit these crimes, and therefore that he was not entrapped.
 
 
 8
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 According to Yanez, she said "What kind of business are you doing? ... I'm so broke, why don't you help me? How am I going to help, I said, there's nothing." (Tr. at 294.) Yanez later continued, "I said everything is fucked, there is nothing. No, all she wanted was help. I said, no, forget it. She wanted me to give her money." (Tr. at 295.) He concluded, "She says she has some money and wants me to stay in her house. And she wants $150,000 for payment or something. Fuck! Do what you make in business, so I'll pick up [sic]." (Id.)
 
 
 [2]
 Id. (noting that defendant demonstrated ease in use of code language and drug dealing jargon); United States v. Lorenzo, 1995 WL 1208, at * 2 (9th Cir.1995) (finding that manner in performing drug transactions and self-characterization as thief undercut claim of lack of predisposition); United States v. Hernandez, 31 F.3d 354, 360 (6th Cir.) (noting that defendant knew a great deal about drug trafficking), cert. denied, 115 S.Ct. 285 (1994)