UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Juan RODRIGUEZ–ANDRADE,
Defendant–Appellant.

No. 94–2628.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1995.

Decided Aug. 9, 1995.

As Modified Aug. 24, 1995.

Philip A. Guentert, Office of the U.S. Atty., Crim. Div., Chicago, IL, Barry Rand Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, Gregory T. Mitchell (argued), Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Lynn A. Hirschfeld (argued), Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, ESCHBACH, and KANNE, Circuit Judges.

ESCHBACH, Circuit Judge.

Jose Juan Rodriguez–Andrade ("Rodriguez") appeals from his conviction for conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846, and from the district court's denial of his motion for a new trial on the grounds that the government knowingly relied upon perjured testimony and suppressed material exculpatory evidence. We affirm.

## I.

According to the government's evidence at trial, on July 28, 1992, Rodriguez visited his cousin Jose Antonio Varela ("Varela") at Varela's house. Knowing that Varela sometimes engaged in drug dealing, Rodriguez asked him if he would be interested in purchasing a kilogram of heroin for approximately $100,000. During the visit, Varela agreed to help set up the deal with a friend of his who might be interested in purchasing the heroin. Unbeknownst to Rodriguez, though, Varela had been convicted of distributing drugs and was cooperating with the federal Drug Enforcement Administration ("DEA") in an effort to obtain a favorable sentencing recommendation. Thus, Varela's buyer turned out to be undercover DEA Agent Rafael Tovar, and Varela tape recorded his subsequent conversations with Rodriguez concerning the deal. On August 17, 1992, after one of Rodriguez's co-conspirators handed over the heroin to Agent Tovar, Rodriguez and his suppliers were arrested.

During trial, Rodriguez countered the tape recordings with an entrapment defense, arguing that he had no experience or interest in drugs until Varela came to him in an attempt to persuade him to enter into a drug transaction. Defense counsel focused intensely on Varela's questionable credibility, cross-examining him about his extensive criminal history, his financial arrangement with the government, his prior inconsistent statements and perjury of many forms, and his bribery of police officers. Rodriguez was not permitted, however, to cross-examine Varela concerning his prior convictions for burglary and misdemeanor criminal trespass, or concerning his uncharged involvement with an ongoing murder investigation in Maywood, Illinois, where Varela was suspected to have "ripped-off" a drug dealer and then murdered him. On April 22, 1992, the

jury found Rodriguez guilty of conspiring to possess with intent to distribute heroin.

Subsequently, Rodriguez moved for a new trial based upon evidence which purportedly revealed that Varela had committed perjury at several points during his testimony and based upon the government's alleged suppression of evidence which would have revealed some of this perjury. The district court denied this motion. Rodriguez filed a timely notice of appeal and we have jurisdiction under 28 U.S.C. § 1291.

## II.

On appeal, Rodriguez continues to press his motion for a new trial, and argues as additional grounds for reversal that the trial court erroneously limited his cross-examination of Varela through a motion in limine, gave an improper instruction on entrapment, and received an inappropriate ex parte communication from the government, and that the jury convicted him on the basis of insufficient evidence.

### A. Motion for New Trial

■ The denial of Rodriguez's motion for a new trial is reviewed under an abuse of discretion standard. *United States v. Adcox,* 19 F.3d 290, 295 (7th Cir.1994). We defer to the district court's judgment as to whether the perjury or exculpatory evidence, to the extent it existed at all, would have changed the outcome of the trial if disclosed. *United States v. Boyd,* 55 F.3d 239, 242 (7th Cir. 1995).

■ First, Rodriguez argues that Varela testified falsely. To receive a new trial on the basis of false testimony, Rodriguez must establish 1) the prosecution's case included false testimony; 2) the prosecution knew, or should have known, of the false testimony; and 3) there is a reasonable probability that, had it not been for the false testimony, he would have been acquitted. *United States v. Ferguson,* 35 F.3d 327, 332 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1832,

131 L.Ed.2d 752 (1995); *Boyd,* 55 F.3d at 243. *See Kyles v. Whitley,* —— U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). A mere inconsistency in testimony, however, does not establish the existence of perjury, or the government's knowledge of any perjury. *Ferguson,* 35 F.3d at 332. Rodriguez suggests that Varela testified falsely on several subjects.

■ Varela testified that his employment as a welder at C & NW Transportation Company was terminated after he was caught stealing some mechanical tools. Rodriguez claims that "newly-discovered" evidence, a C & NW internal police report, reveals that he actually was terminated for credit card theft and fraud. His conviction for criminal trespass and misdemeanor burglary did not come until after he was terminated. The evidence also reveals, however, that before his termination, Varela was a suspect in the theft of mechanical tools and the theft of credit cards used to make an unauthorized purchase of tools. Varela may have been testifying to the best of his knowledge as to the basis for his termination. Thus, the district court committed no abuse of discretion in concluding that Varela did not knowingly utter false testimony, or, in light of the extensive evidence of Varela's perjury and criminal history, that the evidence would not have made a difference in the jury's verdict.

■ Rodriguez next claims that Varela falsely testified that he had never planned any drug rip-offs, or staged drug deals in which the object is to steal the money or the drugs from the other party to the deal. Federal law enforcement reports, as well as Varela's own statements in a prior case, suggested that his testimony was false. Defense counsel, however, confronted Varela with his prior testimony at trial and actually secured an admission from him that he had lied in the earlier proceeding. The district court correctly pointed out that Rodriguez undoubtedly exposed any inadequacies in Varela's testimony during this cross-examination.[1]

---

1. Furthermore, if this was not enough to get the jury's attention, the district court added a cautionary instruction:

Tony Varela has admitted lying under oath. You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

■ Rodriguez also argues that Varela falsely testified as to the date he first discussed drug dealing with Rodriguez and the date he learned where Rodriguez lived. The district court found that, at most, Varela's testimony contained inconsistencies due in large part to defense counsel's confusing line of questioning during cross-examination. This finding is well supported by the record. Such inconsistencies do not form the basis for a false testimony claim. *See Ferguson*, 35 F.3d at 332.

■ Finally, Rodriguez contends that Varela committed perjury during his testimony on voir dire regarding his involvement in a murder in Maywood, Illinois. Varela claimed he was in California when the murder was committed, but Maywood's Deputy Chief of Police testified that Varela made no mention of such an alibi when they questioned him about the murder. Even if this were false testimony, Rodriguez failed to establish that the government knew it was false or that the jury would have changed its verdict in light of it.

■ Second, Rodriguez contends that the government suppressed material, exculpatory evidence by not disclosing the existence of the C & NW internal police reports regarding Valera's misconduct during his employment. As with false testimony, suppression of evidence is not grounds for reversal unless there is a reasonable probability that, if the evidence had been disclosed, it would have changed the jury's verdict. *Kyles*, — U.S. at ——, 115 S.Ct. at 1566; *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Furthermore, if the evidence is available to the defense through the exercise of reasonable diligence, it is not considered suppressed. *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992). In the instant case, the government claims that they had no knowledge of the C & NW report and Rodriguez failed to show otherwise. Moreover, since he could have obtained the report with a subpoena before

trial, it could not have been suppressed by the government. Finally, it is not reasonably probable that Rodriguez would have been acquitted if this material was revealed given the extensive impeachment evidence introduced against Varela at trial.[2]

### B. Motion in Limine

■ Rodriguez claims that the district court erred in granting the government's motion in limine regarding questions about Varela's prior convictions for criminal trespass and burglary and his uncharged involvement in the Maywood murder case. Since these limits on cross-examination affected questions relating to Varela's general credibility, we review them for abuse of discretion. *United States v. Nelson*, 39 F.3d 705, 709–10 (7th Cir.1994).

The district court excluded the burglary and criminal trespass convictions because they were unrelated to Varela's ability to tell the truth. Fed.R.Evid. 609(a)(2). Rodriguez complains that the court performed no independent investigation of the acts to determine if they involved dishonesty or false statements. Yet, this was a showing Rodriguez was obligated to make in order to secure admission of the prior convictions as crimes involving dishonesty or false statements. *See United States v. Motley*, 940 F.2d 1079, 1083 (7th Cir.1991). Furthermore, Varela was extensively impeached at trial with regard to his ability to tell the truth. Thus, it was not an abuse of discretion to exclude this evidence.

■ The district court also prevented Rodriguez from cross-examining Varela about numerous prior uncharged misconduct, including his involvement in drug rip-off schemes and the unsolved Maywood murder case. After voir dire on the subject, the district court ruled that Rodriguez failed to establish Varela's connection to the uncharged crimes. Moreover, Maywood's Deputy Chief of Police corroborated Varela's testimony that he had received no promises with

---

**2.** Rodriguez also argued in his brief for the first time on appeal that the prosecution's action in suborning perjury and failing to disclose evidence independently justifies reversal as "outrageous governmental misconduct." Counsel conceded at oral argument, however, that the doctrine no longer exists in this circuit. *See Boyd*, 55 F.3d at 241. Thus, we need not discuss it further.

regards to any possible charges brought as a result of the murder investigation. It is not an abuse of discretion to exclude speculative evidence of government promises where there is already ample evidence of genuine plea bargains and government benefits. *See Nelson*, 39 F.3d at 709.

## C. Entrapment Instructions

 Rodriguez argues that the instruction to the jury on his entrapment defense was an inaccurate statement of the law and the district court improperly refused his three instructions on the defense. Our review of jury instructions is limited. We reverse only if the jury instructions, viewed as a whole, misguide the jury to the litigant's prejudice. *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 725 (7th Cir.1994). Substantial discretion is afforded to the district court with regard to the precise wording of the instructions. *United States v. Ellis*, 23 F.3d 1268, 1273 (7th Cir.1994) (quoting *United States v. Penson*, 896 F.2d 1087, 1090 (7th Cir.1990)).

After instructing the jury with the standard Seventh Circuit instruction on entrapment, the district court added several supplemental instructions on inducement and predisposition. In the instruction on inducement, the district court stated that "[a] defendant has not been induced to commit a crime as I have used that word unless he has been offered some extraordinary promise or benefit to commit the crime." Rodriguez contends that "extraordinary benefit" relates to predisposition rather than inducement.

Even if those elements of the entrapment defense could be so strictly separated, Rodriguez's contention that this affects the instruction is clearly wrong since this is a word-for-word restatement of an instruction we approved in *Ellis*, 23 F.3d at 1273. Rodriguez further argues that the district court erroneously instructed that inducement may include several factors, "if and only if these factors rise to an extraordinary level." [3] The list of factors was taken from Rodriguez's own proposed instruction No. 17, but he protests against the court's addition of the above-quoted language. This, however, is not an incorrect statement of the law since it merely applies the "extraordinary benefit" requirement in *Ellis* to the specific forms of inducement suggested by Rodriguez.

 Rodriguez also argues that the district court improperly refused to give three of his instructions. Defendant's proposed instruction No. 13, on the burden of proof, and instruction No. 15, on the time in which predisposition is measured, were both given by the district court with only minor modifications.[4] We will not reverse because the district court chose to articulate the defendant's proposed instruction with different words. *See id.; United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). Proposed instruction No. 17, on the forms of inducement, also was given, but with the modification that the forms must "rise to an extraordinary level,"

---

**3.** This portion of the instruction read in full: Inducement may include the following factors if and only if these factors rise to an extraordinary level: pressure, fraudulent representation, threats, coercive tactics, harassment, promises of reward, pleas based on need, friendship or sympathy, or a special relationship, or other government conduct.

**4.** Rodriguez's proposed instruction No. 13 read as follows:
If you find that the defendant was induced or persuaded by law enforcement officers or informants to commit the offense charged, then the prosecution must prove beyond a reasonable doubt that the defendant was predisposed to commit the criminal act prior to first being approached by federal agents. If the government fails to prove the defendant had a prior intent, then the defendant was entrapped.

Rodriguez's proposed instruction No. 15 read as follows:
The predisposition of the defendant must not be assessed as of the time the defendant committed the crime, but rather, before the government informant made any suggestion to the defendant to commit the crime.

The district court read the following instruction to the jury in addition to the pattern Seventh Circuit instruction's statement on when the predisposition must occur:
If you find the defendant Rodriguez was induced by governmental conduct to commit the crime charged, then the burden is on the government to prove beyond a reasonable doubt that Rodriguez was predisposed to commit the crime prior to inducement by the government informant.

which, as we indicated previously, the law requires. Thus, the district court committed no error in instructing the jury.

### D. Sufficiency of the Evidence

 A jury verdict will not be overturned for insufficient evidence unless there is no evidence from which the jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Akinsanya*, 53 F.3d 852, 858 (7th Cir.1995); *United States v. Tilmon*, 19 F.3d 1221, 1229 (7th Cir.1994). We review the evidence in the light most favorable to the government, without reweighing or reassessing the credibility of the witnesses. *Id.*

 Rodriguez contends that the government presented insufficient evidence for the jury to find that he was not entrapped. Where a defendant has been offered inducement by a government informant to commit a crime, the government must prove beyond a reasonable doubt that the defendant was disposed to commit the crime before ever being approached by the government informant. Thus, the jury must determine (1) if the government induced the defendant to commit a crime, and (2) whether there was a lack of predisposition on the part of the defendant to commit the crime. *Akinsanya*, 53 F.3d at 858. Rodriguez specifically focuses on the latter factor, arguing that the government failed to establish that he was predisposed.

 To establish predisposition, we consider a number of factors: (1) character or reputation; (2) whether the government suggested the criminal activity; (3) whether a profit was involved; (4) whether reluctance was expressed which was overcome by government persuasion; and (5) the nature of the inducement or persuasion. *United States v. Casanova*, 970 F.2d 371, 375 (7th Cir.1992). Viewed in the light most favorable to the jury's verdict, the government provided more than ample evidence of Rodriguez's predisposition. Although he was inexperienced in the drug trade, this alone is insufficient to defeat predisposition. *Akinsanya*, 53 F.3d at 858. Varela testified that Rodriguez approached him about the possibility of finding a buyer for a kilogram of heroin. There was no evidence that Rodri-

guez was ever reluctant to enter the deal, except insofar as he became suspicious of one of the government informants initially involved as a buyer, a fact which belies the picture of a naive participant in a government scheme. Rodriguez's willingness to participate was also evidenced by his ability to acquire a kilo of heroin for the deal, a substantial amount of drugs. *Cf. id.* ("100 grams" termed "a significant amount"). Finally, Rodriguez's payment for arranging the deal, $10,000, was by no means out of the ordinary. Agent Tovar testified that in a $100,000 drug transaction, a normal broker's commission would be between $5,000 and $15,000. Thus, since Rodriguez was "simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates [his] predisposition." *Jacobson v. United States*, 503 U.S. 540, 550, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992).

### E. Ex Parte Communications

 Rodriguez's last claim is that the district court erred in receiving an ex parte letter from the government concerning its motion in limine regarding Varela, and then placing the letter under seal. The district court's actions in this regard were clearly not an abuse of discretion. *United States v. Napue*, 834 F.2d 1311, 1316 (7th Cir.1987). Defense counsel was informed of the substance of the letter, which concerned ongoing investigations involving, in part, Varela's attempt on two occasions to bribe a police officer during a traffic stop. After hearing counsel's argument, Rodriguez was permitted to cross-examine Varela concerning the bribery attempts, but was prohibited from going into the details of the on-going investigations. Rodriguez cannot claim that he was prejudiced by either the filing or the sealing of the letter.

### III.

For the reasons above, the jury's verdict, and the decisions of the district court, are

AFFIRMED.